# EXHIBIT 1

No. 21-16040

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

MEREDITH CALLAHAN, ET AL.,

*Plaintiffs-Appellees*,

v.

PEOPLECONNECT, INC.,

*Defendant-Appellant*.

On Appeal from the United States District Court for the
Northern District of California, San Francisco
No. 3:20-cv-09203
Hon. Edward M. Chen, District Judge

_____

## DEFENDANT-APPELLANT'S OPENING BRIEF

_____

Clifford W. Berlow
Debbie L. Berman
Wade A. Thomson
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
Telephone: 312 222-9350
cberlow@jenner.com
dberman@jenner.com
wthomson@jenner.com

Kate T. Spelman
JENNER & BLOCK LLP
515 S. Flower St., Suite 3300
Los Angeles, California 90071
Telephone: 213 239-5100
kspelman@jenner.com

Ian Heath Gershengorn
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
Telephone: 202 639-6000
igershengorn@jenner.com

*Attorneys for Defendant-Appellant*
*PeopleConnect, Inc.*

# DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record for Defendant-Appellant PeopleConnect, Inc. ("PeopleConnect") state that PeopleConnect is a wholly-owned subsidiary of PeopleConnect Holdings, Inc., a non-public Delaware corporation, and PCHI Parent, Inc., a non-public Delaware corporation.

No publicly held corporation owns 10% or more of PeopleConnect's stock. PeopleConnect, Inc., has no publicly held affiliates.

## STATEMENT REQUESTING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a), Defendant-Appellant PeopleConnect, Inc. respectfully requests oral argument. This appeal presents significant issues relating to the scope of arbitration agreements and the application of the Federal Arbitration Act. PeopleConnect submits that oral argument will assist the Court in resolving this appeal.

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ........................................................... i

STATEMENT REQUESTING ORAL ARGUMENT ........................................... ii

TABLE OF AUTHORITIES ............................................................ v

INTRODUCTION ..................................................................... 1

JURISDICTIONAL STATEMENT ......................................................... 4

STATEMENT OF ISSUE PRESENTED .................................................... 4

STATUTORY AUTHORITY ............................................................. 4

STATEMENT OF THE CASE ........................................................... 5

    I.     PLAINTIFFS' COMPLAINT ..................................................... 6

    II.    THE DISTRICT COURT'S DENIAL OF THE MOTION TO COMPEL ARBITRATION ......................................................... 8

SUMMARY OF THE ARGUMENT ........................................................ 11

STANDARD OF REVIEW .............................................................. 15

ARGUMENT ........................................................................ 15

    I.     UNDER CALIFORNIA LAW, PLAINTIFFS ARE BOUND TO PEOPLECONNECT'S ARBITRATION PROVISION ............. 16

        A.    Plaintiffs' Attorney Assented To The Arbitration Agreement ............................................................... 17

        B.    Counsel's Agreement Binds Plaintiffs .................................... 19

            1.    Mr. Osborn Had Actual Implied Authority To Agree To The Terms Of Service, Including The Arbitration Clause ....................................... 20

        2.     Plaintiffs Are Bound To The Terms Of Service
Because They Benefited From The Bargain Their
Attorney Struck ............................................................... 22

        3.     Plaintiffs Are Bound To The Terms Of Service
Because They Ratified The Agreement ......................... 24

II.    THE DISTRICT COURT'S RATIONALES FOR IGNORING
TRADITIONAL CONTRACT AND AGENCY LAW DO
NOT HOLD UP TO SCRUNITY ...................................................... 26

    A.    *Blanton* Does Not Prevent Arbitration Here ............................ 27

        1.     *Blanton* Is Distinguishable From This Case ................. 27

        2.     The District Court's Reading Of *Blanton* Is At
Odds With California Law ............................................. 32

    B.    If *Blanton* Were As Broad As The District Court
Claimed, The Federal Arbitration Act Would Preempt Its
Rule ........................................................................................... 36

    C.    Mr. Osborn's Agreement To The Classmates.com Terms
Of Service Creates No Conflict With Rule 11 Obligations ..... 39

CONCLUSION ..........................................................................................42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado Cmty. Hosp. v. Superior Ct.*,
    173 Cal. App. 3d 476 (1985) .....................................................12, 22, 23, 25, 35

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)............................................................................................18

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
    785 F.3d 1320 (9th Cir. 2015) ....................................................................16, 32

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)..............................................................14, 15, 18, 36, 38

*Binder v. Aetna Life Ins. Co.*,
    75 Cal. App. 4th 832 (1999) ............................................................................18

*Blanton v. Womancare, Inc.*,
    696 P.2d 645 (Cal. 1985)..........................................................................*passim*

*Bock v. Salt Creek Midstream LLC*,
    Civ. No. 19-1163, 2020 WL 5640669 (D.N.M. Sept. 22, 2020).........................6

*Caro v. Smith*,
    59 Cal. App. 4th 725 (1997) .......................................................................24, 35

*Cohen v. TNP 2008 Participating Notes Program, LLC*,
    31 Cal. App. 5th 840 (2019) ............................................................................19

*Cordas v. Uber Techs., Inc.*,
    228 F. Supp. 3d 985 (N.D. Cal. 2017)........................................................ 18-19

*Crypto Asset Fund, LLC v. OPSkins Grp. Inc.*
    478 F. Supp. 3d 919 (C.D. Cal. 2020)............................................................20

*Cnty. of Contra Costa v. Kaiser Found. Health Plan, Inc.*,
    47 Cal. App. 4th 237 (1996) ............................................................................24

*Douglass v. Serenivision, Inc.*,
    20 Cal. App. 5th 376 (2018) ...............................................................................35

*Epic Systems Corporation v. Lewis*,
    138 S. Ct. 1612 (2018)..............................................................................15, 41

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995).........................................................................................15

*Garrison v. Superior Ct.*,
    132 Cal. App. 4th 253 (2005) .................................................................. 19-20

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)..........................................................................................38

*Girard v. Ball*,
    125 Cal. App. 3d 772 (1981) ....................................................................12, 19

*Goldie v. Caliber Home Loans, Inc.*,
    No. 16-cv-00962, 2018 WL 4659576 (E.D. Cal. Sept. 28, 2018)............... 22-23

*Grafton Partners v. Superior Ct.*,
    116 P.3d 479 (Cal. 2005) .................................................................................30

*Hofer v. Emley*,
    No. 19-cv-02205, 2019 WL 4575389 (N.D. Cal. Sept. 20, 2019) ..............23, 24

*Indep. Living Res. Ctr. S.F. v. Uber Techs., Inc.*,
    No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019)...............*passim*

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
    137 S. Ct. 1421 (2017)....................................................................3, 14, 36, 37

*Knabe v. Brister*,
    154 Cal. App. 4th 1316 (2007) ...................................................................28, 32

*Levin v. Caviar, Inc.*,
    146 F. Supp. 3d 1146 (N.D. Cal. 2015)............................................................18

*Madani v. Cnty. of Santa Clara*,
    No. 16-CV-07026, 2019 WL 402362 (N.D. Cal. Jan. 31, 2019) ......................22

*Madden v. Kaiser Found. Hosps.*,
    552 P.2d 1178 (Cal. 1976) ...................................................................1, 30, 33

*May v. Midland Funding, LLC (In re May)*,
    595 B.R. 894 (E.D. Ark. 2019) ...............................................................6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)...............................................................................31

*Momot v. Mastro*,
    652 F.3d 982 (9th Cir. 2011) ...............................................................15

*Mormile v. Sinclair*,
    21 Cal. App. 4th 1508 (1994) ...............................................................19

*Mortensen v. Bresnan Commc'ns, LLC*,
    722 F.3d 1151 (9th Cir. 2013) .........................................................16, 36

*Navrides v. Zurich Ins. Co.*,
    5 Cal. 3d 698 (1971) ........................................................................ 24-25

*NORCAL Mut. Ins. Co. v. Newton*,
    84 Cal. App. 4th 64 (2000) .........................................22, 24, 25, 26, 34

*Penthouse Int'l, Ltd. v. Barnes*,
    792 F.2d 943 (9th Cir. 1986) .........................................................12, 19

*Rakestraw v. Rodrigues*,
    500 P.2d 1401 (Cal. 1972) ....................................................................25

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010)...........................................................................15, 30

*Shearson/Am. Express, Inc. v. McMahon*,
    482 U.S. 220 (1987)...............................................................................38

*Tamsco Props., LLC v. Langemeier*,
    597 F. App'x 428 (9th Cir. 2015) .......................................1, 12, 21, 33

*Tompkins v. 23andMe, Inc.*, No. 13-CV-05682, 2014 WL 2903752
    (N.D. Cal. June 25, 2014) ................................................................ 17-18, 19

*Zoller v. GCA Advisors, LLC*,
  993 F.3d 1198 (9th Cir. 2021) ....................................................16, 32

**Statutes**

9 U.S.C. § 2 ....................................................................................15

9 U.S.C. § 4 ......................................................................................4

9 U.S.C. § 16 ....................................................................................4

28 U.S.C. § 1332 ..............................................................................4

Cal. Civ. Code § 2319(1) ................................................................22

Cal. Civ. Code § 2330 ....................................................................21

# INTRODUCTION

This case presents a straightforward issue of California agency law. California courts, and this Court, have long held that a nonsignatory to an arbitration agreement may be bound to such an agreement by the act of an agent. *E.g.*, *Madden v. Kaiser Found. Hosps.*, 552 P.2d 1178, 1182 (Cal. 1976); *Tamsco Props., LLC v. Langemeier*, 597 F. App'x 428, 429 (9th Cir. 2015). The district court erroneously held, however, that the usual rules do not apply when the agent is an attorney and the agreement is one to arbitrate. The court compounded that error by allowing Plaintiffs to keep the benefit of their agent's promise to arbitrate, while disavowing their obligations. The district court's decision cannot stand.

Defendant-Appellant PeopleConnect, Inc. owns and operates Classmates.com, a website that features an extensive online library of school yearbooks. Plaintiffs-Appellees Meredith Callahan and Lawrence Geoffrey Abraham attended schools with yearbooks in the Classmates.com library. Plaintiffs have alleged the online presentation of images from their school yearbooks violates California law, chiefly their statutory right of publicity. Crucially, to bolster their complaint, counsel for Plaintiffs created accounts on Classmates.com, accepted the Classmates.com Terms of Service, including the arbitration agreement, and included in the complaint screenshots from parts of Classmates.com that are accessible only after agreeing to arbitrate.

In denying PeopleConnect's motion to compel arbitration, the district court acknowledged "there is no real dispute that Plaintiffs' counsel is, in fact, their agent." ER-9. It nevertheless held "a lawyer cannot bind a client to an arbitration agreement" without express authorization. ER-10–11. The court then refused to find ratification by Plaintiffs to the agreement, even though Plaintiffs included materials gleaned from their attorney's investigation in their complaint and relied on that material in opposing PeopleConnect's motion to dismiss.

That is not the law. The district court's decision relies almost entirely on *Blanton v. Womancare, Inc.*, 696 P.2d 645 (Cal. 1985). But *Blanton* has little to say here. The client there told her attorney *not to agree* to binding arbitration and, when the attorney agreed nonetheless to an egregiously disadvantageous arbitration provision on the eve of trial, the client immediately terminated him. *Id*. at 647–48. This case could not be more different. Plaintiffs have never claimed they directed their attorney not to agree to arbitrate. The agreement to arbitrate occurred before litigation commenced. And Plaintiffs ratified the agreement by accepting the benefit of access to Classmates.com by incorporating screenshots into their complaint and relying on those screenshots in opposing the motion to dismiss.

Worse, the district court's approach is foreclosed by the Federal Arbitration Act. As the district court saw it, the usual rules of agency law under which an agent may bind a principal based on implied actual authority, rather than express

actual authority, do not apply if an agreement "waive[s] the right to a judicial forum." ER-9. If the usual rules of agency do not apply to arbitration agreements, however, then California law is preempted by the FAA because it embraces a defense that "derive[s] [its] meaning from the fact that an agreement to arbitrate is at issue." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1423 (2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

Nor is there merit to the district court's glancing suggestion that the attorney's interest in satisfying Rule 11 might independently justify its decision. Among other things, the Terms of Service allowed the attorney to create an account and then opt-out of the arbitration clause within 30 days. So even if Rule 11 were implicated here—a dubious proposition—it could not justify the district court's decision because the attorney could have investigated the client's allegations without being bound to arbitrate.

As other district courts in this Circuit have recognized, *see Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*, No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019), nothing in California agency law permits a client in these circumstances to have her cake and eat it too. And even if California law permitted it, federal arbitration law forecloses it. Plaintiffs are bound by the agreement to arbitrate that their attorney-agent entered into for

their benefit and that in fact provided them substantial benefit in their effort to litigate their claims. The Court should reverse the decision below.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1332. The district court issued its decision denying PeopleConnect's motion to compel arbitration made pursuant to 9 U.S.C. § 4 on May 18, 2021. ER-3–12. PeopleConnect timely filed its notice of appeal on June 16, 2021. ER-177–94. This Court has jurisdiction under 9 U.S.C. § 16.

## STATEMENT OF ISSUE PRESENTED

Whether an agreement to arbitrate entered into by an attorney for a client's benefit binds the client when the information made available only because of the agreement is used to investigate the client's potential claim, to draft the client's complaint, and as a basis for the client's opposition to a motion to dismiss.

## STATUTORY AUTHORITY

Title 9, Section 4 of the U.S. Code provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, … for an order directing that such arbitration proceed in the manner provided for in such agreement. … The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

4

## STATEMENT OF THE CASE

PeopleConnect owns and operates Classmates.com. Founded in 1995, Classmates.com offers an online library of over 450,000 school yearbooks, making it perhaps the preeminent library of yearbooks on the internet. Access to some of that library is available to any website user for free. To access most of it, however, a Classmates.com user must register either for a free or paid account. During the registration process, a user is prompted with the following: "By clicking Submit, you agree to the Terms of Service and Privacy Policy." ER-83, ¶ 6. The Terms of Service are hyperlinked from that message and the user must click "submit" to create an account. *Id.* The Terms of Service contain the following provision:

> **YOU AND THE PEOPLECONNECT ENTITIES EACH AGREE THAT ANY AND ALL DISPUTES THAT HAVE ARISEN OR MAY ARISE BETWEEN YOU AND THE PEOPLECONNECT ENTITIES SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT[.]**

ER-83–84, ¶ 8. The Terms of Service further provide that any arbitration "will be governed by the Consumer Arbitration Rules of the American Arbitration Association ("AAA") …. The arbitration will be presided over by a single arbitrator." ER-84, ¶ 9.

The Terms of Service also provide "[y]ou have the right to opt-out and not be bound by this arbitration provision by sending written notice of your decision to opt-out to: [PeopleConnect]." ER-100, Ex. 1, § 13D. To opt-out, a "notice must be

5

sent within thirty (30) days of your first use of the Services or, if you are already a user of the Services upon initial release of this arbitration provision, within thirty (30) days of our email notice to you of that initial release." *Id.*[1]

# I. PLAINTIFFS' COMPLAINT.

On December 18, 2020, Plaintiffs filed a four-count putative class action complaint against PeopleConnect. ER-143–76. The gravamen of all four claims is that PeopleConnect has unlawfully appropriated Plaintiffs' likenesses by displaying excerpts of their school yearbook pictures on Classmates.com in response to user-generated searches for Plaintiffs' names and by displaying those pictures in close proximity to offers to purchase yearbook reprints, to register for the free version of Classmates.com, and to purchase access to the complete Classmates.com website. ER-145, ¶¶ 7–9. Plaintiffs alleged that these acts violated their statutory rights under the California Right of Publicity Act, Cal. Civ. Code § 3344 and the California Unfair Competition Law, Cal. Bus. & Prof. Code

---

[1] The Terms of Service also provide that "any proceedings will be conducted only on an individual basis and not in a class or representative action." ER-84, ¶ 10 (capitalization omitted). Because Plaintiffs have not yet sought to certify a putative class, because "[t]he terms and conditions in these Terms of Service are severable[,]" ER-101, Ex. 1, § 14, and because the district court held only that PeopleConnect could not compel Plaintiffs to present their claims in arbitration, the question of whether the class action waiver is enforceable is neither resolved by the decision below nor is it before this Court on appeal. *See, e.g.*, *Bock v. Salt Creek Midstream LLC*, Civ. No. 19-1163, 2020 WL 5640669, at *8–9 (D.N.M. Sept. 22, 2020) (declining to compel arbitration, but enforcing class action waiver); *May v. Midland Funding, LLC* (*In re May*), 595 B.R. 894 (E.D. Ark. 2019) (same).

§ 17200 *et seq.*, and also gave rise to California common law claims for intrusion upon seclusion and unjust enrichment. *See* ER-170–73, ¶¶ 73–96.

In pleading those claims, Plaintiffs included in their complaint twenty-two "screenshots"—images of what was displayed on the screen of a computer or mobile device—presenting different parts of the Classmates.com website. The images, combined with Plaintiffs' written allegations, explain that Classmates.com contains a search function that allows users, registered and non-registered alike, to search for the names of individuals. *See* ER-148–55, ¶¶ 22–29, ER-157–58, ¶ 39, ER-159–64, ¶¶ 41–47. The website then informs the users as to the records available for individuals with that name on Classmates.com. *See, e.g.,* ER-151, ¶ 24; ER-159, ¶ 41. Links and popups that follow from those initial search results present the offers to purchase reprinted yearbooks, register as a free user, and pay for access to Classmates.com. *See* ER-151–55, ¶¶ 24–29, ER-159–62, ¶¶ 41–44, ER-163–64, ¶¶ 46–47.

The screenshots show that someone was logged into a Classmates.com account when most of the screenshots were presented. Some show username "John Smith" logged into an account. *See* ER-148–49, ¶ 22, ER-153, ¶ 26, ER-154, ¶ 27, ER-155, ¶ 29, ER-159, ¶ 41, ER-164, ¶ 47. Others show username "Benjamin Osborn" logged into an account. *See* ER-149–52, ¶¶ 22–25, ER-157, ¶ 39, ER-160–61, ¶¶ 42–43, ER-162, ¶¶ 44–45. Four screenshots display images where a

login is either not visible or it is apparent that no user was logged into an account. *See* ER-154, ¶ 28, ER-158, ¶ 39, ER-163, ¶ 46.

In a subsequently submitted declaration, PeopleConnect's Associate Director of Compliance and Intellectual Property confirmed that Benjamin Ross Osborn—counsel for Plaintiffs in this case—has three Classmates.com accounts. ER-81, ¶ 1, ER-85, ¶¶ 12–14. The first was registered on August 25, 2019, under the username "Benjamin Osborn" with the associated email address of osbornb1@gmail.com; the second was registered on December 6, 2020, under the username "John Doe" with an associated email address of ben@benosbornlaw.com (the same email appearing on the signature block of the complaint, *see* ER-174 at 32); the third was registered on December 6, 2020, under the username "John Smith" with an associated email address of benjamin.r.osborn@gmail.com. ER-85, ¶¶ 12–14. This declaration reported that Mr. Osborn could not have created any of those accounts "without first agreeing to the Classmates.com [Terms of Service]" and that many of the screenshots came from webpages that "could only have been accessed after the user agreed to the Classmates.com [Terms of Service]." *Id.*, ¶¶ 15–16.

## II. THE DISTRICT COURT'S DENIAL OF THE MOTION TO COMPEL ARBITRATION.

PeopleConnect moved to dismiss Plaintiffs' complaint. *See* ER-104–40. In doing so, PeopleConnect raised a range of defenses—that the claims alleged are

8

foreclosed by Section 230 of the Communications Decency Act, that all but one of the claims are preempted by the Copyright Act, that Plaintiffs' allegations are not sufficient to state actionable claims under the relevant California statutes, and that the First Amendment bars Plaintiffs' claims. ER-104–40. Those substantive arguments all remain pending before the district court and have not yet been addressed.

Before the Court now is the threshold argument PeopleConnect advanced in its motion—that Plaintiffs, through their agent, Mr. Osborn, agreed to the Terms of Service and thus were obligated to pursue their claims in arbitration. *See* ER-117–20; *see* ER-80–103. None of the key facts were disputed. Plaintiffs did not deny that Mr. Osborn was their agent; he created at least three Classmates.com accounts; he evaluated Plaintiffs' claims by using at least one of those accounts to examine Classmates.com; he used at least one of those accounts to create and extract screenshots that were then incorporated into the complaint; and he could not have obtained access to those screenshots without agreeing to the Terms of Service. *See* ER-58–61. PeopleConnect, therefore, requested that the district court issue an order compelling Plaintiffs to adjudicate their claims in arbitration.

The district court nonetheless declined to compel Plaintiffs to arbitrate their claims. The court acknowledged that "[a] nonsignatory-principal can be compelled to arbitrate based on the agreement to arbitrate made by a signatory-agent" and that

9

"there is no real dispute that Plaintiffs' counsel is, in fact, their agent." ER-8–9. But it determined that under *Blanton v. Womancare, Inc.*, 696 P.2d 645 (Cal. 1985)—a case not cited by either party in written briefing and raised only by the court at oral argument—a client may be bound to an arbitration agreement only "if the lawyer had *express* actual authority to enter into an arbitration agreement" or "if the lawyer entered into the arbitration agreement without authorization, but the client subsequently *ratified* the act." ER-9.

The district court then found that neither condition had been satisfied. It found "no indication that Plaintiffs expressly authorized their counsel to enter into the arbitration agreement" and concluded that Plaintiffs did not "ratif[y] the agreement to arbitrate." ER-11. The district court provided no analysis on the ratification issue. It did not grapple with the fact that Plaintiffs' complaint included the very information their attorney had obtained by agreeing to arbitrate. Nor did the court acknowledge that Plaintiffs relied on that information in opposing PeopleConnect's motion to dismiss. The court also did not explain how Plaintiffs could keep the benefits from their attorney's investigation without abiding by the agreement to arbitrate.

The district court acknowledged that its decision conflicted with another decision of that same district court—*Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*, No. 18-cv-06503, 2019 WL 3430656 (N.D.

Cal. July 30, 2019), where the court granted a motion to compel arbitration in materially identical circumstances. ER-11. Making no attempt to reconcile the two decisions, the district court simply noted that "*Uber* is not binding" and submitted that it did not find *Uber* to be persuasive because it "did not address *Blanton* or the concerns raised therein." *Id*. The district court also identified as a policy concern that "counsel's use of the website was undertaken as part of … an investigation consistent with counsel's Rule 11 obligations … and Plaintiffs' duty to plead with specificity a plausible claim under" Rule 12, stating that it was "troubled" by the "suggestion that a plaintiff's access to a judicial forum may be cut off simply because counsel for the plaintiff fulfilled a duty under Rules 11 and 12 to investigate prior to filing suit." ER-11–12.

## SUMMARY OF THE ARGUMENT

The district court was wrong, and this Court should reverse its decision. PeopleConnect's request that Plaintiffs be compelled to pursue their claims in arbitration pursuant to the Terms of Service should have been granted because Mr. Osborn, acting on Plaintiffs behalf as their agent, agreed to the Terms of Service. Plaintiffs cannot have it both ways. They cannot accept the fruits of Mr. Osborn's access to the Classmates.com website—numerous screenshots they incorporated into their complaint—while disavowing the conditions PeopleConnect places upon all users who enjoy the benefits of the services it provides.

11

The California agency law that governs this case is not open to serious dispute. As a matter of California law, a nonsignatory to an arbitration agreement may be bound by her agent's assent to that agreement. *E.g.*, *Girard v. Ball*, 125 Cal. App. 3d 772, 784-85 (2008); *see Penthouse Int'l, Ltd. v. Barnes*, 792 F.2d 943, 947-48 (9th Cir. 1986) (applying California law). And that is so even when the agent agrees to arbitrate. *See, e.g.*, *Tamsco*, 597 F. App'x at 429. Moreover, even if an agent lacks authority to enter a contract, it is a "well-settled rule of agency that a principal will be held to have ratified the agent's actions where he voluntarily accepts the benefits of the unauthorized transaction." *Alvarado Cmty. Hosp. v. Superior Ct.*, 173 Cal. App. 3d 476, 481 (1985).

Those well settled principles dictate the result here. The tasks Plaintiffs asked Mr. Osborn to perform for them—investigating their potential claims and preparing a complaint on their behalf—cloaked Mr. Osborn with implied actual authority under California law to enter into any agreements that were part and parcel of completing those tasks. Moreover, even if Mr. Osborn did not have sufficient authority, though he plainly did, Plaintiffs still are bound to arbitrate because they ratified his agreement to the Terms of Service, first, by accepting the benefits of Mr. Osborn's access to Classmates.com by including the materials he gathered for them in the complaint and, second, by relying on those same materials in opposing PeopleConnect's motion to dismiss.

12

The district court nonetheless denied PeopleConnect's motion to compel arbitration. But the district court's disregard of the straightforward application of these fundamental agency law principles simply cannot withstand scrutiny.

***First***, the district court is wrong that the California Supreme Court resolved this issue in *Blanton*. While there are a number of distinctions between this case and *Blanton*, the key issue in *Blanton* was whether a client could be bound by her attorney's agreement on the eve of trial to arbitrate after the client had expressly told her attorney *not to agree* and after the client had affirmatively repudiated her attorney's actions by terminating him immediately for his actions. *Blanton*, 696 P.2d at 647–48. This is a very different case. Plaintiffs here have never indicated that they directed Mr. Osborn not to agree to arbitrate on their behalf *and* they ratified the agreement to the Terms of Service by accepting the benefits that access to the Classmates.com website provided to them by incorporating the screenshots into their complaint and subsequent litigation filings. Under California agency and contract law, Plaintiffs are bound to their agent's assent to the Terms of Service, and nothing in *Blanton* holds otherwise.

***Second***, even assuming *arguendo* that California law prevents attorneys from agreeing to arbitration agreements on behalf of their clients without express authorization, that aspect of California law is preempted by the Federal Arbitration Act. The Supreme Court has repeatedly held that state law contract "defenses that

13

apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue" are preempted and invalid. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). And the Supreme Court has specifically determined that states cannot impose "clear-statement rules"—that is, rules requiring that agents have express authority before entering into agreements to arbitrate. *Kindred Nursing Centers*, 137 S. Ct. at 1426. So if it is true that California contract law carves out a special exception to ordinary principles of California agency law based on the fact that the underlying contractual agreement is one to arbitrate, federal law precludes that defense.

*Third*, to the extent the district court held that Federal Rule of Civil Procedure 11 precludes the faithful application of California agency law, that too was wrong. For one thing, the Terms of Service allowed Mr. Osborn to opt-out of the arbitration agreement within 30 days, so no obligation under Rule 11 (or elsewhere) could justify disregarding the arbitration provisions. And in any event, the requirements of Rule 11 do not give license to attorneys to run roughshod over any and all legal restraints on pre-suit evidence gathering.

In sum, controlling and established principles of agency, contract, and arbitration law all show that the district court should have granted PeopleConnect's motion to compel. This Court should reverse the district court's error.

## STANDARD OF REVIEW

This Court "review[s] de novo the district court's decisions about the arbitrability of claims." *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) (reversing injunction enjoining arbitration).

## ARGUMENT

This case arises under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. Under the FAA, agreements to arbitrate, like the one in this case, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. Because the FAA thus reflects a "liberal federal policy favoring arbitration," *Epic Systems Corporation v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citation omitted), and sets forth the "fundamental principle that arbitration is a matter of contract," *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010), agreements to arbitrate cannot be invalidated "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC*, 563 U.S. at 339. To identify generally applicable contract defenses, federal courts look to state law—in this case, California state law. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

"Generally, a court must determine two issues before deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the

15

parties; and (2) whether the agreement covers the dispute." *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021) (citation omitted). Here, Plaintiffs' claims plainly fall within the scope of the agreement. So the only question is whether there is a contract between Plaintiffs and PeopleConnect. As the party seeking to compel arbitration, PeopleConnect bears the burden to show by a preponderance of the evidence that there is an agreement to arbitrate, *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015), while the burden falls on Plaintiffs to show that any contract is not enforceable, *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013). PeopleConnect has met its burden. Plaintiffs have not met and cannot meet theirs.

## I.     UNDER CALIFORNIA LAW, PLAINTIFFS ARE BOUND TO PEOPLECONNECT'S ARBITRATION PROVISION.

Basic rules of contract and agency law resolve this case. Plaintiffs' attorney, Mr. Osborn, created accounts on Classmates.com. When he created those accounts, Mr. Osborn agreed to the Terms of Service. The Terms of Service include an agreement to arbitrate. Mr. Osborn acted at the direction of and for the benefit of Plaintiffs when he agreed to the Terms of Service—that is, to achieve Plaintiffs' objectives, Mr. Osborn agreed to the Terms of Service so he could review and harvest information that was valuable to Plaintiffs. Mr. Osborn thus had implied actual authority to agree to Classmates.com's arbitration provision on Plaintiffs' behalf. Moreover, Plaintiffs actually benefited from the information Mr. Osborn

16

obtained. Specifically, Plaintiffs included in their complaint screenshots of portions of the Classmates.com website that they could not have accessed without agreeing to the Terms of Service. They then relied upon those screenshots in opposing PeopleConnect's motion to dismiss. Those actions ratified Mr. Osborn's agreement.

Under traditional principles of contract and agency law, this is an easy case. Plaintiffs are bound to the arbitration agreement entered into by their agent for their benefit.

### A. Plaintiffs' Attorney Assented To The Arbitration Agreement.

Mr. Osborn agreed to the Terms of Service. As discussed above, he did so multiple times when registering his three accounts on Classmates.com, one of which uses the same email address that appears in his signature block in the complaint. ER-85, ¶¶ 12–16; *see* ER-174. He could not have created these accounts without assenting to the Terms of Service. ER-83–85, ¶¶ 6, 12–16. The complaint confirms such assent, as it includes screenshots showing Mr. Osborn's access to sections of the website accessible only after assent. ER-148–53, ¶¶ 22–26, ER-155, ¶ 29, ER-157–61, ¶¶ 39, 41–43, ER-164, ¶ 47, ER-83, ¶ 6, ER-85, ¶¶ 12–16; *see Tompkins v. 23andMe, Inc.*, No. 13-CV-05682, 2014 WL 2903752, at *7 (N.D. Cal. June 25, 2014) (plaintiff's access to portions of website requiring assent to terms of use constitutes sufficient evidence of assent), *aff'd*, 840 F.3d 1016 (9th

Cir. 2016). Those screenshots also confirm that Mr. Osborn used two of his Classmates.com accounts—one of which he created on December 6, 2020, twelve days before this action was filed, *see* ER-85, ¶¶ 12–15—to search for records he then used in the complaint he filed on Plaintiffs' behalf as their authorized agent.

Below, Plaintiffs suggested that Mr. Osborn could not have validly consented to the Terms of Service because he assented to an adhesive clickwrap agreement. This is incorrect, and the district court rightly ignored it. "[T]he times in which consumer contracts were anything other than adhesive are long past." *AT&T Mobility LLC*, 563 U.S. at 346–47. Courts thus have enforced any number of arbitration agreements in standard consumer contracts. *E.g.*, *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 231, 238–39 (2013) (rejecting challenge to class action ban in arbitration provision in standard agreement between merchants and credit card companies); *AT&T Mobility LLC*, 563 U.S. at 336–37, 351–52 (same as to standard AT&T cellular service contracts).

This includes clickwrap agreements, which require a user to click a button to assent to a website's terms of service. *E.g.*, *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015) (compelling arbitration); *see also Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999). The terms need not be displayed on the same page as the button; rather, a user may be bound by hyperlinked terms. *See, e.g.*, *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988, 990–91 (N.D. Cal.

2017) (determining that plaintiff agreed to arbitrate by creating account, when told that "[b]y creating an Uber account, you agree to the Terms & Conditions and Privacy Policy," and "[t]he phrase 'Terms & Conditions and Privacy Policy' was displayed in a clickable box that linked a user to the pages containing the then-current terms and conditions and privacy policies"); *Tompkins*, 2014 WL 2903752, at *8 (enforcing arbitration agreement where plaintiff "clicked a box or button that appeared near a hyperlink to the [Terms of Service] to indicate acceptance of the [Terms of Service]").

### B. Counsel's Agreement Binds Plaintiffs.

Under California agency law, even when express actual authority is lacking, agents with implied actual authority, ostensible authority, or apparent authority can bind their principals to contractual agreements. *E.g.*, *Girard*, 125 Cal. App. 3d at 784–85; *see Penthouse Int'l, Ltd.*, 792 F.2d at 947–48 (applying California law). This rule makes sense. People should be bound by the acts of those who represent them. If that were not the case, agents could freely sign contracts, and principals could then avoid any liabilities associated with those agreements. This principle applies with equal force to agreements to arbitrate. *E.g.*, *Mormile v. Sinclair*, 21 Cal. App. 4th 1508, 1511 (1994) (noting "arbitration agreements are enforced with regularity against nonsignatory parties"); *see Cohen v. TNP 2008 Participating Notes Program, LLC*, 31 Cal. App. 5th 840, 861–66 (2019) (same); *Garrison v.*

*Superior Ct.*, 132 Cal. App. 4th 253, 264 (2005) (same and identifying other similar cases); *see also Crypto Asset Fund, LLC v. OPSkins Grp. Inc*. 478 F. Supp. 3d 919, 927 (C.D. Cal. 2020); *Indep. Living Res. Ctr. S.F.*, 2019 WL 3430656, at *4.

The rule is no different if the agent is an attorney. As the district court's primary source for its ruling states, "the attorney-client relationship, insofar as it concerns the authority of the attorney to bind his client by agreement or stipulation, is governed by the [usual] principles of agency … the client as principal is bound by the acts of the attorney-agent within the scope of his actual authority (express or implied) or his apparent or ostensible authority." *Blanton*, 696 P.2d at 649 (internal quotation marks omitted) (citing *Yanchor v. Kagan*, 22 Cal. App. 3d 544, 549 (1971) (attorney with ostensible authority bound client)). And even if an attorney lacked any type of authority, "unauthorized acts of an attorney may be binding upon his client through ratification." *Id.* at 653.

Here, Plaintiffs are bound by Mr. Osborn's agreement because he had implied actual authority, because Plaintiffs accepted the benefit of Mr. Osborn's agreement, and because Plaintiffs affirmatively ratified Mr. Osborn's actions.

### 1.     Mr. Osborn Had Actual Implied Authority To Agree To The Terms Of Service, Including The Arbitration Clause.

As the district court noted, "there is no real dispute that Plaintiffs' counsel is, in fact, their agent" here. ER-9. "Under California law, when a nonsignatory and

20

one of the parties to an arbitration agreement have an agency relationship, the arbitration agreement may be enforced against the nonsignatory." *Tamsco*, 597 F. App'x at 429; *see also Indep. Living Res. Ctr. S.F.*, 2019 WL 3430656, at *4. In *Tamsco*, individuals affiliated with the plaintiffs' companies attended a conference, at which all attendees were required to sign an agreement containing an arbitration provision. 597 F. App'x at 429. The companies "allege[d] that, in reliance on information presented at the conferences, they made investments that resulted in financial losses." *Id.* Because "the affiliated individuals who attended the conferences did so on their behalf," this Court held the companies were bound by the arbitration agreement the attendees signed. *Id.*

Likewise, when Mr. Osborn investigated Plaintiffs' claims and took screenshots of Classmates.com, he did so on their behalf. Thus, in agreeing to the Terms of Service, he must be treated as having done so as Plaintiffs' agent. *See* Cal. Civ. Code § 2330 ("[A]n agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal.").

For their part, Plaintiffs have never disputed that accessing Classmates.com, which required agreeing to the Terms of Service, was part and parcel of the task Plaintiffs set for their counsel; indeed, they claimed Mr. Osborn was required to do

so to investigate their claims. *See* ER-59 (arguing that "[c]ounsel must use the website to meet the pleading standard"). Thus, even if Plaintiffs did not expressly authorize Mr. Osborn to agree to the Terms of Service, Mr. Osborn had implied actual authority to do so. *See* Cal. Civ. Code § 2319(1) ("An agent has authority: [t]o do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his agency[.]").

### 2. Plaintiffs Are Bound To The Terms Of Service Because They Benefited From The Bargain Their Attorney Struck.

Plaintiffs also are bound to the arbitration clause because they received the benefit of the agreement Mr. Osborn made with PeopleConnect. A nonsignatory may be "required to arbitrate a claim because a benefit was conferred on the nonsignatory as a result of the contract." *NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 76–77 (2000) (quoting *Cnty. of Contra Costa v. Kaiser Found. Health Plan, Inc.*, 47 Cal. App. 4th 237, 242 (1996)). This rule applies with great stringency when the signatory is the non-signatory's agent, as it is a "well-settled rule of agency that a principal will be held to have ratified the agent's actions where he voluntarily accepts the benefits of the unauthorized transaction." *Alvarado Cmty. Hosp.*, 173 Cal. App. 3d at 481; *accord, e.g.*, *Madani v. Cnty. of Santa Clara*, No. 16-CV-07026, 2019 WL 402362, at *11 (N.D. Cal. Jan. 31, 2019) (accepting the benefits of a settlement agreement); *Goldie v. Caliber Home*

22

*Loans, Inc.*, No. 16-cv-00962, 2018 WL 4659576, at *8–9 (E.D. Cal. Sept. 28, 2018) (same).

"The theory of this rule is that where the principal knows he would not be entitled to the benefits unless he affirmed the transaction, it would be unfair to allow him both to have his cake and eat it too; that is, allow him both to accept the benefits and also repudiate the transaction." *Alvarado Cmty. Hosp.*, 173 Cal. App. 3d at 481. Yet that is precisely what Plaintiffs seek to do. Mr. Osborn accessed screenshots and other information on the Classmates.com website that he could not have accessed without agreeing to the arbitration clause. ER-83–85, ¶¶ 6–7, 15–16. Mr. Osborn gathered that information and those screenshots for Plaintiffs' benefit. And Plaintiffs have in fact benefitted: The information and screenshots Mr. Osborn compiled appeared in Plaintiffs' complaint to support their claims. ER-148–54, ¶¶ 22–27, ER-155, ¶ 29, ER-157–58, ¶ 39, ER-159–62, ¶¶ 41–45, ER-164, ¶ 47. And they then relied on those same materials in opposing PeopleConnect's motion to dismiss. *See, e.g.*, ER-57, ER-65. Hence, "[t]he benefit conferred on [Plaintiffs] is the exact benefit conferred on the signatory," Mr. Osborn. *Hofer v. Emley*, No. 19-cv-02205, 2019 WL 4575389, at *6 (N.D. Cal. Sept. 20, 2019). "[I]ndeed, the ability to" explore aspects of Classmates.com off-limits to non-members—screenshots of which appear in Plaintiffs' complaint, *see* ER-148–54, ¶¶ 22–27,

23

ER-155, ¶ 29, ER-157–58, ¶ 39, ER-159–62, ¶¶ 41–45, ER-164, ¶ 47—"is the *only* benefit conferred by the Agreement." *See Hofer*, 2019 WL 4575389, at *6.

Under California law, Plaintiffs cannot dispatch their agent to develop their potential claims, which required their agent to agree to arbitration in order to gain access to valuable information which he then used in litigation, and then try to abandon the arbitration agreement. *See Indep. Living Res. Ctr. S.F.*, 2019 WL 3430656, at *4; *Cnty. of Contra Costa v. Kaiser Found. Health Plan, Inc.*, 47 Cal. App. 4th 237, 242 (1996). "[A] principal is not allowed to ratify the unauthorized acts of an agent to the extent that they are beneficial, and disavow them to the extent that they are damaging. If a principal ratifies part of a transaction, he is deemed to ratify the whole of it." *NORCAL Mut. Ins. Co.*, 84 Cal. App. 4th at 81 (quoting *Navrides v. Zurich Ins. Co.*, 5 Cal. 3d 698, 704 (1971)). Plaintiffs therefore must follow the arbitration agreement both as a matter of agency law and because they actively claimed the benefit of the agreement.

### 3. Plaintiffs Are Bound To The Terms Of Service Because They Ratified The Agreement.

Even if Mr. Osborn lacked authority to agree to arbitration on Plaintiffs' behalf (which he did not), Plaintiffs later ratified the agreement. *See Caro v. Smith*, 59 Cal. App. 4th 725, 731 (1997) (discussing "important agency principle of ratification through which unauthorized acts of an attorney may be binding upon a client" (internal quotation marks and citation omitted)); *see also Navrides v. Zurich*

*Ins. Co.*, 5 Cal. 3d 698, 704 (1971) (holding that client ratified attorney's unauthorized settlement of claim by seeking proceeds of unauthorized agreement); *Alvarado Cmty. Hosp.*, 173 Cal. App. 3d at 481 (holding that client ratified attorney's unauthorized settlement by accepting proceeds of settlement). To ratify, "[a] purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred." *Rakestraw v. Rodrigues*, 500 P.2d 1401, 1405 (Cal. 1972). Accordingly, "[a] principal's failure to promptly disaffirm an agent's conduct on her behalf constitutes a ratification." *NORCAL Mut. Ins. Co.*, 84 Cal. App. 4th at 79 (finding arbitration agreement binding in case where client failed promptly to repudiate attorney's actions on her behalf).

Here, Plaintiffs failed to promptly disaffirm Mr. Osborn's action on their behalf, even after PeopleConnect moved to compel arbitration. Instead, Plaintiffs affirmatively relied on the screenshots Mr. Osborn acquired for them in responding to PeopleConnect's motion to dismiss. *See, e.g.*, ER-57, ER-65. This "failure to promptly disaffirm" Mr. Osborn's conduct on their behalf—and indeed to affirmatively use the screenshots he obtained by agreeing to the Terms of Service in opposing PeopleConnect's motion to dismiss—"constitutes a ratification." *See*

*NORCAL Mut. Ins. Co.*, 84 Cal. App. 4th at 79.[2] The arbitration provision, therefore, binds Plaintiffs, due both to Mr. Osborn's initial authority as their agent in agreeing to it and to their own ratification after he did so.

## II. THE DISTRICT COURT'S RATIONALES FOR IGNORING TRADITIONAL CONTRACT AND AGENCY LAW DO NOT HOLD UP TO SCRUTINY.

The district court laid aside a straight-forward application of these generally-applicable agency principles in favor of what it believed were particular rules governing "the specific issue of when a lawyer, as agent, can bind a client to an arbitration agreement – *i.e.,* waive the right to a judicial forum." ER-9. In so doing, the court fashioned both an attorney exception and an arbitration exception to California contract and agency law. Neither exception is appropriate.

The district court relied on two sources for its ruling: a California Supreme Court decision, *Blanton v. Womancare, Inc.*, 696 P.2d 645, that Plaintiffs did not cite in their briefs, and Federal Rule of Civil Procedure 11. But *Blanton*—which

---

[2] The district court stated without any discussion that there was no "suggestion that Plaintiffs, after the fact, ratified the agreement to arbitrate." ER-11. The district court failed to grapple with, or even consider, the California case law finding that clients can ratify their counsel's actions by failing to repudiate them. Moreover, it ignored that Plaintiffs affirmatively used the materials they were able to access because of Mr. Osborn's consent to their benefit, first in the complaint and then in opposing PeopleConnect's motion to dismiss. Because the district court considered the question as a matter of law and not of fact, *see* ER-9, it refused PeopleConnect's request for jurisdictional discovery and did not inquire into whether Plaintiffs had repudiated the agreement. As discussed above, however, the available facts are enough to show that Plaintiffs failed promptly to repudiate the arbitration provision.

declined to enforce an arbitration agreement that an attorney entered just before trial and that the client explicitly and promptly repudiated—does not extend to the circumstances here. As for the district court's concern about a conflict between the arbitration provision and Rule 11, it does not exist. Mr. Osborn easily could have fulfilled his obligations under Rule 11 without binding Plaintiffs to arbitrate, as he could have opted-out of the arbitration provisions in the Terms of Service. What is more, using Rule 11 as a shield against contractual agreements would allow attorneys to evade any number of commitments that anyone else would be bound to follow.

### A. *Blanton* Does Not Prevent Arbitration Here.

#### 1. *Blanton* Is Distinguishable From This Case.

Consider first *Blanton*. In *Blanton*, the California Supreme Court had to decide whether to compel arbitration in an extraordinary situation. The plaintiff, Harriette Blanton, brought a medical malpractice action for a serious injury sustained during an abortion procedure. *Blanton*, 696 P.2d at 646–47. Two days before trial, after years of litigation and ignoring her express instructions, Blanton's attorney agreed to arbitrate her claims. *Id*. at 647. At least five aspects of the case, considered together, convinced the court the arbitration provision could not reasonably be enforced.

27

*First*, the attorney lacked any authority to bind Blanton to the arbitration agreement because Blanton had explicitly told her attorney she would not agree to arbitrate unless she could maintain her right to a jury trial *de novo* after the fact. *Id.* Her attorney nevertheless agreed with the defendants to submit the matter to binding arbitration. *Id.* This express direction from the client was central to the court's holding. Earlier California case law suggested "an attorney is 'presumed' to have authority even with respect to substantial matters affecting the client's cause, but that the presumption is 'rebuttable,'" if "an attorney enter[s] into an agreement in direct opposition to instruction of the client.'" *Id.* at 651 n.8. "Whatever this presumption may mean in other contexts," the *Blanton* court said, "it has no application here, since it is clear that in this case the agreement was entered into in direct opposition to the instructions by plaintiff to her attorney." *Id.*[3]

*Second*, the attorney also lacked authority because he agreed to arbitrate the case "two days before the case was finally to be tried," well after the right to trial by jury had attached under California law. *Id.* at 647, 652 ("[T]he agreement did not constitute a tactical maneuver in pending litigation; rather, it called for a *diversion* of the dispute from the judicial to the arbitral arena."). As Chief Justice Bird's concurrence emphasized, California law provides significant protections of

---

[3] Subsequent California courts have recognized that *Blanton*'s core holding is that "[a]n attorney has no authority to stipulate *over his or her client's objection* that the case be submitted to binding arbitration." *Knabe v. Brister*, 154 Cal. App. 4th 1316, 1324 (2007) (citing *Blanton*, 696 P.2d at 652–53) (emphasis added).

28

the right to a judicial forum once that right attaches. *See id.* at 653–55 (Bird, C.J., concurring).

**Third**, the arbitration agreement prejudiced Blanton. It allowed the defense attorney to unilaterally choose the arbitrator, as long as the arbitrator's "practice consists primarily of *defending* medical malpractice actions." *Id.* at 647 (emphasis added). The agreement also limited any potential recovery to $15,000. *Id.*

**Fourth**, there was no justifiable reliance by the counterparty to the arbitration agreement. As the California Supreme Court noted, "there may be some matters as to which the justification of an attorney's reliance upon the stipulation of his opponent would depend upon whether the relying attorney was aware of objection on the part of his opponent's client." *Id.* at 652. But it found "in this case the lack of justifiable reliance is clear," because opposing counsel knew from the start that Blanton had immediately objected to arbitration. *Id.*

**Fifth**, there was no serious argument for ratification. To the contrary, when Blanton discovered that her attorney had agreed to binding arbitration on her behalf, "she immediately objected, and fired" the attorney. *Id.* at 647. She procured new representation and promptly "moved to invalidate the stipulation to binding arbitration executed by" her former attorney. *Id*. at 647–48.

The situation here could not be more different. First, and most importantly, Plaintiffs have never asserted that they instructed Mr. Osborn ahead of time not to

agree to an arbitration provision. So unlike in *Blanton*, Mr. Osborn did not violate any express instruction from his client. Second, the agreement to arbitrate was entered into before any complaint was filed, and thus did not trigger California's statutory jury trial protection. *See Grafton Partners v. Superior Ct.*, 116 P.3d 479, 484 (Cal. 2005) (explaining that "predispute arbitration agreements" are "distinguishable from waivers of the right to jury trial in that they represent an agreement to avoid the judicial forum altogether"); *see generally Madden*, 552 P.2d at 1186–88. Third, the terms of the arbitration under the applicable arbitration rules are just.[4] Fourth, there is no suggestion that PeopleConnect had reason to believe Mr. Osborn lacked authority. Fifth, Plaintiffs did not repudiate the benefits Mr. Osborn's assent conferred upon them and, indeed, made use of those materials, which ratified the agreement.

Moreover, Mr. Osborn's authority to agree to arbitration on Plaintiffs' behalf stemmed from more than just his status as a retained attorney. Plaintiffs tasked him

---

[4] Below, Plaintiffs in a footnote purported to "reserve the right to argue the arbitration clause … is procedurally and substantively unconscionable." ER-59 n.3. But Plaintiffs offered no substantive explanation for why the agreement was not enforceable, and the time has long passed for them to do so. In all events, because the Terms of Service include a delegation clause requiring that any such claim be resolved by an arbitrator, rather than a court, such an argument is not one that could be raised in this forum. *See* ER-84, ¶ 9; Hearing Minutes, *Dlugolecki v. PeopleConnect, Inc.*, No. 2:20-cv-3657, ECF No. 46 (C.D. Cal. Nov. 9, 2020) (affirming enforceability of PeopleConnect delegation clause and granting motion to compel arbitration); *see also Rent-A-Ctr.*, 561 U.S. at 68–70, 69 n.1 (2010) (discussing delegation clauses).

with researching the viability of their claims and preparing a complaint on their behalf. Inherent in that charge was authorization for Mr. Osborn to take the actions he considered necessary to accomplish that task—here, visiting Classmates.com and obtaining the images and information Plaintiffs later included in their complaint. *See* ER-59 (arguing that "[c]ounsel must use the website to meet the pleading standard"). Mr. Osborn agreed to the arbitration provision, along with the rest of the Terms of Service, pursuant to that specific direction, as a condition of obtaining the information Mr. Osborn sought out to confirm Plaintiffs' claims. *See* Cal. Rules Pro. Conduct R. 1.2(a) ("noting that "a lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation").

Finally, to the extent either *Blanton* or the district court's decision reflects skepticism about arbitration as a means of dispute resolution, that analysis cannot withstand scrutiny. Arbitration merely provides an alternative means of obtaining that relief for one's client—an alternative that "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). "By agreeing to arbitrate …, a party does not forgo the substantive rights afforded by the statute [or common law]; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* Thus, arbitration simply provides an alternative forum to resolve disputes. And the question of

which forum to litigate in is a tactical matter an attorney is implied by law to be authorized to select. *See Knabe v. Brister*, 154 Cal. App. 4th 1316, 1323–27 (2007) (holding that attorney could bind principal to stipulation agreeing to transfer exclusive jurisdiction from Texas to California).

### 2. The District Court's Reading Of *Blanton* Is At Odds With California Law.

In nonetheless denying PeopleConnect's motion to compel, the district court acknowledged that *Blanton* addressed a situation in which an attorney agreed to arbitration despite explicit instructions from his client not to do so. Yet the district court suggested that *Blanton*'s rule applies whenever clients do not explicitly authorize their attorney *to agree* to arbitration—in essence, that agreeing to arbitrate requires express authorization. ER-10–11.[5]

That is not correct. As the California Supreme Court has long held, the idea that "the authority of an agent to agree to arbitrate must be specifically conferred"

---

[5] The district court suggested its reading of *Blanton* "is consistent with federal law, which requires a *knowing* waiver of the right to a judicial forum." ER-11. The federal body of law the district court references, however, requires knowing waivers only for a limited number of specific federal statutory claims where Congress has so required or their state law equivalents. *E.g.*, *Ashbey*, 785 F.3d at 1323–24 (explaining that "[t]he scope of the FAA is narrowed by other federal statutes, such as Title VII and the Americans with Disabilities Act ("ADA"), which 'limit the enforcement of arbitration agreements with regard to claims arising under th[ose] statute[s].'" (quoting *Kummetz v. Tech Mold, Inc.,* 152 F.3d 1153, 1155 (9th Cir.1998)); *accord Zoller*, 993 F.3d at 1202–03 (noting that knowing waiver requirement "applies only to a comparatively small class of claims" (citation omitted)). That is not true of Plaintiffs' claims in this case.

dates "from an era of judicial hostility to arbitration …. [that] has long since receded into a remote past." *E.g.*, *Madden*, 552 P.2d at 1183. Indeed, this Court has noted that "[u]nder California law, when a nonsignatory and one of the parties to an arbitration agreement have an agency relationship, the arbitration agreement may be enforced against the nonsignatory." *Tamsco*, 597 F. App'x at 429. As *Tamsco* illustrates, California law generally gives agents wide latitude to commit principals to arbitration, without the client's pre-approval. Attorney-agents are no different. *See supra* Part I.B (citing cases).[6]

Another district court decision in this Circuit exemplifies how these California agency rules apply. In *Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*, the plaintiffs sued Uber "on behalf of Bay Area residents who were deterred from using the Uber App because of the inferior and discriminatory service it allegedly provides to wheelchair users." 2019 WL 3430656, at *1. Uber moved to compel arbitration on the ground that the plaintiffs' agent—a paralegal at the legal organization representing them—agreed to Uber's terms of service while researching the claims. *Id.* at *4. The court held that because the plaintiffs had "dispatched their agents to affirmatively test the Uber application

---

[6] Whatever issues Plaintiffs may have with their counsel's agreement to arbitrate are irrelevant to whether that agreement is binding on them. *Blanton* itself noted that "a client may be bound by the actions of his attorney and at the same time have a legal claim against him on the ground that those actions were undertaken without or in excess of authority." *Blanton*, 696 P.2d at 649.

in order to bolster their claim of discrimination," and "proceeded to file a complaint that specifically referenced the data they collected from the Uber App," the plaintiffs were "bound by the arbitration agreement to the same extent as their agent." *Id.* at *4.

This case is no different. Instead of accessing Classmates.com themselves, Plaintiffs "dispatched" Mr. Osborn to "affirmatively test [Classmates.com] in order to bolster their claim[s]." *Id.* Through Mr. Osborn, Plaintiffs gained access to portions of Classmates.com they could not have otherwise viewed. They "proceeded to file a complaint that specifically referenced the data they collected from" Classmates.com. *Id.*; *see* ER-148–54, ¶¶ 22–27, ER-155, ¶ 29, ER-157–58, ¶ 39, ER-159–62, ¶¶ 41–45, ER-164, ¶ 47. Plaintiffs cannot avoid arbitration by having their attorney do what they otherwise would have had to do themselves. Rather, as in *Uber*, Plaintiffs are "bound by the arbitration agreement [in the Terms of Service] to the same extent as their agent." 2019 WL 3430656, at *4.

Finally, independent of the question of whether Plaintiffs' attorney could bind Plaintiffs in the first instance, the district court disregarded that under California law non-signatories can be bound to the contracts of their agents by receiving the benefit of the bargain and then failing to promptly repudiate their agent's actions. *See NORCAL Mut. Ins. Co.*, 84 Cal. App. 4th at 79. Of course, that occurred here. And though the district court insisted there was no "suggestion" of

ratification here, ER-11, the court also ignored that Plaintiffs affirmatively took advantage of the benefits of Mr. Osborn's assent to the Terms of Service by incorporating information and screenshots from Classmates.com in their complaint and then relying on those materials in opposing a motion to dismiss.

*Blanton* illustrates the point. The plaintiff there certainly could not have agreed to arbitrate, won in arbitration, and then attempted to continue litigating the case in court while keeping the $15,000 in damages allowed under the arbitration agreement. To the contrary, California courts have noted that "[n]othing in … *Blanton* … allows attorneys to renege on agreements for binding arbitration because they are displeased by an award." *Caro*, 59 Cal. App. 4th at 731. The reason for such rules is simple: "It would be manifestly inequitable to allow a client 'both to have his cake and eat it too; that is, allow him both to accept the benefits and also repudiate the transaction.'" *Id.* (citation omitted); *accord, e.g.*, *Douglass v. Serenivision, Inc.*, 20 Cal. App. 5th 376, 389 (2018); *Alvarado Cmty. Hosp.*, 173 Cal. App. 3d at 481.

Here, as discussed above, Plaintiffs received the benefit of the agreement by receiving and using information and screenshots they could obtain only on condition of agreeing to the Terms of Service, including its arbitration provision. Plaintiffs cannot claim the main benefit of the contract to which Mr. Osborn agreed while seeking to abjure the responsibilities that flow from the contract.

## B. If *Blanton* Were As Broad As The District Court Claimed, The Federal Arbitration Act Would Preempt Its Rule.

The FAA prohibits any state rule that disadvantages contracts to arbitrate as compared to other contracts. *See AT&T Mobility LLC*, 563 U.S. at 341; *see also Mortensen*, 722 F.3d at 1160–61 (holding that Montana rule invalidating arbitration agreements in adhesive contracts where arbitration component not within "reasonable expectations" of party preempted under *AT&T Mobility*). Yet the district court construed *Blanton* to create a rule limiting an attorney's ability to "waive[] a judicial forum in favor of binding arbitration." ER-10. To the extent the district court correctly understood California law to require a heightened requirement of express authority for entering into *arbitration agreements* on a client's behalf, as opposed to other types of contracts, which may be entered into by virtue of implied actual authority alone, such a rule suggests an improper hostility to arbitration. "[A] court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what … the state legislature cannot.'" *AT&T Mobility LLC*, 563 U.S. at 341 (citation omitted).

The Supreme Court's decision in *Kindred Nursing Centers* is on point. There, two plaintiffs with written powers of attorney completed paperwork to admit family members to a nursing home, including an arbitration agreement. 137 S. Ct at 1425. After the family members passed away, both sued the nursing home

36

operator. *Id*. The nursing home operator moved to compel arbitration, but the Kentucky Supreme Court held that because the Kentucky Constitution declares the rights of access to the courts and trial by jury to be "sacred" and "inviolate," the power of attorneys were invalid because they did not expressly authorize the agents to deprive their principals of "fundamental constitutional rights." *Id*. at 1426 (citation omitted). The Supreme Court reversed, holding that Kentucky's "clear-statement" rule was preempted by the FAA because it "fails to put arbitration agreements on an equal plane with other contracts." *Id*. at 1426–27. "Such a rule is too tailor-made to arbitration agreements—subjecting them, by virtue of their defining trait, to uncommon barriers—to survive the FAA's edict against singling out those contracts for disfavored treatment." *Id*. at 1427.

Here, the district court read *Blanton* to impose a rule indistinguishable from the one the Supreme Court rejected in *Kindred Nursing Centers*. According to the district court, under California law, "absent client consent or ratification, a lawyer cannot bind a client to an arbitration agreement" and Plaintiffs thus were not bound because "there is no indication that Plaintiffs expressly authorized [him] to enter into the arbitration agreement." ER-10–11. *Kindred Nursing Centers* squarely prevents California from adopting such a rule. "[G]eneralized attacks on arbitration 'res[t] on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants,' and as such, they are

'far out of step with [the Supreme Court's] current strong endorsement of the federal statutes favoring this method of resolving disputes.'" *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 30 (1991) (citation omitted).[7]

The district court thus applied *Blanton* in a manner that impermissibly discriminates against arbitration. Under *Kindred Nursing Centers*, state law may not make it harder for an agent to agree to arbitration merely because arbitration waives jury trial rights and judicial review, when under the usual rules of agency courts would view the principal as having authorized that agent to agree to other types of contracts. "A rule selectively finding arbitration contracts invalid because improperly formed fares no better under the [FAA] than a rule selectively refusing to enforce those agreements once properly made." *Kindred Nursing Centers*, 137 S. Ct. at 1428. To the extent the district court correctly construed *Blanton* and California law, the FAA preempts that aspect of California law. *See, e.g.*, *AT&T Mobility LLC*, 563 U.S. at 341–42, 351–52.

---

[7] *Blanton*'s concerns about lack of judicial review, *see* 696 P.2d at 652–53, also cannot justify disadvantaging arbitration agreements. "[A]lthough judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of" the law. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 232 (1987).

### C. Mr. Osborn's Agreement To The Classmates.com Terms Of Service Creates No Conflict With Rule 11 Obligations.

The district court also expressed concern that binding Plaintiffs to arbitrate might conflict with Mr. Osborn's duties under Rule 11 of the Federal Rules of Civil Procedure. ER-11–12.[8] There is no such conflict here.

*First*, Mr. Osborn had the right to opt-out of the arbitration agreement for 30 days after he created the accounts. ER-100, Ex. 1, § 13(D). Mr. Osborn easily could have conducted the necessary investigation to fulfill any Rule 11 duties that he perceived and *also* retained the right to a judicial forum, by later opting-out. He simply did not do so. Though he did not take advantage of the opportunity, Mr. Osborn's ability to opt-out negates any potential conflict between agreeing to arbitration and the need to investigate under Rule 11.

Below, Plaintiffs' response was to assert that Mr. Osborn tried to opt-out of the arbitration provision and that Classmates deleted the account rather than accede to his request to opt-out. ER-44:19–45:20. This response does nothing to help Plaintiffs. First, it confirms that Mr. Osborn knew he could opt-out and that he simply chose not to do so. Second, this incident has nothing to do with this case because this incident did not involve the accounts Mr. Osborn created for

---

[8] The district court also referenced "a duty … to investigate" under Rule 12, ER-12, but a litigant's inability to satisfy the notice pleading requirements of Rule 8 without agreeing to arbitrate does not justify casting aside an otherwise valid contractual agreement to arbitrate.

Plaintiffs. It involved a *separate* account Mr. Osborn created before oral argument on the arbitration motion, which he represented to the district court was made solely to test the opt-out procedure after the fact. By then, the 30-day time period for opting-out of the accounts relevant to this case had long since elapsed.[9]

   ***Second,*** the district court's suggestion that if the law permitted Mr. Osborn to bind Plaintiffs to arbitration in these circumstances, "Plaintiffs here would either file suit without doing the necessary pre-suit investigation, raising serious concerns, or would waive the right to a judicial forum," is not accurate. ER-12. An attorney is not required to pursue all avenues, however legally dubious, in the name of satisfying his Rule 11 obligations. An attorney cannot break into a defendant's servers or offices, for instance, simply because he thinks it would serve his "necessary pre-suit investigation." *Id*. No more can an attorney (or his clients) ignore contractual restrictions imposed by the party that holds the information. Were it otherwise, attorneys could freely violate any sort of contract or law they wished if doing so would grant them access to more information during their investigations. Nothing in Rule 11 gives attorneys a get-out-of-jail-free card if they ignore lawful constraints on gathering evidence. Thus, whatever "policy" concerns the district court may have with binding clients to agreements their

---

[9] PeopleConnect noted below that its deletion of the account was a one-off mistake and not indicative of its broader response to attempts to opt-out. ER-19, n.2 (citing Reply in Supp. of Mot. to Dismiss at 3, *Bonilla v. PeopleConnect, Inc.*, No. 21-cv-00051 (N.D. Ill. June 21, 2021), ECF No. 45).

attorneys reach while researching their claims, ER-12, nothing in the Federal Rules of Civil Procedure lets clients evade the consequences of lawyers' actions on their behalf.

*Third*, the district court premised its Rule 11 analysis on a concern that "a plaintiff's access to a judicial forum may be cut off simply because counsel for the plaintiff fulfilled a duty under Rules 11 and 12 to investigate prior to filing suit." ER-12. Such an attempt to fence out arbitration agreements constitutes discrimination against arbitration in violation of the FAA. *See supra* Part II.B. If *other* kinds of contractual agreements may bind a client while the attorney is in the process of investigating a complaint, attorneys must be able to bind clients to *arbitration*, as well. Nothing in Rule 11's text or drafting history suggests that it implicitly carves out an exception to the FAA's equal-treatment rule. *See Epic Sys. Corp.*, 138 S. Ct. at 1624 (stating that anyone claiming another federal law displaces the FAA "bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow" (internal quotation marks and citation omitted)).

## CONCLUSION

For the foregoing reasons, Defendant-Appellant PeopleConnect, Inc. respectfully requests that the Court reverse the judgment of the district court and direct this matter to proceed to arbitration.

Date: September 24, 2021

Clifford W. Berlow
Debbie L. Berman
Wade A. Thomson
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
Telephone: 312 222-9350
cberlow@jenner.com
dberman@jenner.com
wthomson@jenner.com

Kate T. Spelman
JENNER & BLOCK LLP
515 S. Flower St., Suite 3300
Los Angeles, California 90071
Telephone: 213 239-5100
kspelman@jenner.com

Respectfully submitted,

*/s/ Ian Heath Gershengorn*
Ian Heath Gershengorn
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
Telephone: 202 639-6000
igershengorn@jenner.com

*Attorneys for Defendant-Appellant*
*PeopleConnect, Inc.*

# STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, the undersigned attorney or self-represented party states the following:

[**X**]   I am unaware of any related cases currently pending in this court.

[  ]   I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ]   I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature:** *_/s/ Ian Heath Gershengorn_*      **Date:** September 24, 2021

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 21-16040

I am the attorney or self-represented party.

**This brief contains 10,222 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** */s/ Ian Heath Gershengorn*     **Date:** September 24, 2021