## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| SCOTT MACKEY, *on behalf of himself and all others similarly situated*, | ) ) ) ) | |
| | ) | No. 22 C 342 |
| *Plaintiff,* | ) | |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| PEOPLECONNECT, INC., | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

### MEMORANDUM OPINION & ORDER

Plaintiff Scott Mackey brings a putative class action against Defendant PeopleConnect, Inc. (Dkt. 1). PeopleConnect owns Classmates.com, a website that maintains a database of school yearbooks. Mackey alleges that PeopleConnect violates the Illinois Right of Publicity Act and is unjustly enriched by using his name and likeness from his high school yearbook to advertise subscriptions to Classmates.com without his consent. (*Id.*) PeopleConnect moves to dismiss for improper venue under Rule 12(b)(3), arguing that Mackey is bound to arbitrate individually any claims against PeopleConnect. (Dkts. 44, 45). In the alternative, PeopleConnect moves to dismiss for failure to state a claim. (Dkts. 44, 45). For the following reasons, the Court denies PeopleConnect's Motion. [44]

### BACKGROUND

### A.  Classmates.com's Operations[1]

PeopleConnect, Inc. owns and operates the website Classmates.com, which has collected and made searchable information and images from tens of thousands of yearbooks from Illinois

---

[1] This section concerns the facts relevant to the elements of Mackey's claims against PeopleConnect, which are before the Court on a Rule 12(b)(6) motion to dismiss and assumed true for purposes of the motion. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022).

schools (among its over 400,000 school yearbooks collected from around the country). (Dkt. 1 ¶¶ 1, 6, 23, 25, 32). Web users can visit Classmates.com for free and search for people and their images. (*Id.* ¶ 6). The site first displays low-resolution versions of the searched-for individual's photographs. (*Id.* ¶¶ 5, 7). When users click on the photograph to view a higher resolution version, or when they attempt to view more than two low-resolution photos, a pop-up message asks them to register for a paid Classmates.com membership. (*Id.* ¶¶ 5–7). PeopleConnect also displays messages adjacent to the searched-for individuals' photos soliciting paid subscriptions. (*Id.* ¶ 8). Subscribers then get access to full-resolution student photographs from all yearbooks in the database, visibility into who has visited the subscriber's profile, and the ability to read and reply to messages sent by other subscribers. (*Id.* ¶ 12).

Plaintiff Scott Mackey has never visited Classmates.com nor registered as a member. (*Id.* ¶¶ 2, 46). But the site generates advertisements for its subscription services when someone clicks on his photo. (*Id.* ¶¶ 5–8). Mackey alleges that PeopleConnect has used his own high school yearbook photo to offer paid subscriptions to Classmates.com. (*Id.* ¶¶ 5–8, 49–56). This practice, according to Mackey, misleads the public into believing that he endorses Classmates.com's subscription product when he has not consented to his photo's use. (*Id.* ¶¶ 9–10). There is no opt-out mechanism. (*Id.* ¶ 19).

## B.    Classmates.com's Terms of Service and Arbitration Agreement[2]

Non-member visitors to Classmates.com are prompted to register for a free membership after clicking through only the first few pages of a yearbook. (Dkt. 45-1 ¶ 7). When a visitor registers for a free account, he or she must agree to Classmates.com's Terms of Service and Privacy

---

[2] This section concerns the facts relevant to PeopleConnect's Rule 12(b)(3) motion to dismiss for improper venue. The Court considers facts from evidence outside the pleadings on such a motion. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808–10 (7th Cir. 2011).

Policy ("TOS"). (*Id.* ¶¶ 13, 21). Only after registering for a free membership does Classmates.com show advertisements for paid subscriptions to the site. (*Id.* ¶ 8). To see advertisements for Classmates.com's subscription products, then, the user must have registered for a free account and agreed to the TOS. (*Id.* ¶¶ 4, 8–13).

The TOS includes an arbitration provision that requires Classmates.com members to settle any disputes with PeopleConnect individually through arbitration. (*Id.* ¶¶ 15–16; *id.* at 52, 57 § 12). The November 9, 2021 version of the TOS covers the member as well as anyone on whose behalf the member is acting. (*Id.* ¶ 15 ("Additionally, if you access and use the Websites and Services on behalf of or for the benefit of another, you are also agreeing to these Terms of Service on their behalf, and further affirm that you have the authority to so agreed. Any reference to 'you' or 'your' shall also include any such person(s).")). The TOS also allows the member to opt out, on his own behalf or as an agent for another, of the arbitration provision by sending an opt-out notice to PeopleConnect within thirty days of first use. (*Id.* ¶ 17).

Mackey has never created any membership account—free or paid—with Classmates.com, so he has never personally agreed to the TOS. (*Id.* ¶¶ 22–23; dkt. 54 ¶¶ 11–12). One of his attorneys, Benjamin Osborn, created a Classmates.com account on August 25, 2019, and he did not opt out of the arbitration provision within thirty days. (Dkt. 45-1 ¶ 26). He agreed to the TOS.[3] (*Id.* ¶ 27). Osborn has also created at least five additional accounts using different email addresses

---

[3] Osborn agreed to a different version of the TOS in 2019, which stated in relevant part: "You and PeopleConnect entities each agree that any and all disputes that have arisen or may arise between you and the PeopleConnect entities shall be resolved exclusively through final and binding arbitration." (Dkt. 56-9 at 18–22 § 13). Mackey argues that the TOS Osborn originally agreed to in 2019 did not include Defendant's provided language, which became effective November 9, 2021, and expressly covers anyone on whose behalf the member acts when using the site. (Dkt. 53 at 13). The 2019 TOS also states that updates to the TOS will be posted on the website and this posting constitutes notice of any changes; a member's continued use of the websites and services constitutes acceptance of such changes. (Dkt. 56-9 at 3). If Osborn continued to use his Classmates.com account following the posting of the November 2021 TOS, then he accepted the updated language. The record does not show whether he used his account for any purpose after the November 2021 TOS came into effect.

and sent notice to PeopleConnect to opt out of the arbitration provision for three of them.[4] (Dkt. 45-1 ¶¶ 28–33).

Mackey retained Osborn on June 3, 2021, and before then, he had never met or spoken with Osborn. (Dkt. 54 ¶¶ 3–4). Mackey did not know that Osborn had created a Classmates.com account or ever agreed to its TOS until seeing PeopleConnect's Motion filed on July 13, 2022. (*Id.* ¶¶ 7–8). Just before filing this lawsuit on Mackey's behalf, Osborn emailed PeopleConnect's counsel stating that Mackey does not consent to arbitration of any claims he may have against PeopleConnect, does not authorize his counsel to consent to arbitration on his behalf, and has not ratified any agreements to arbitrate. (Dkt. 1-3). The email does not reference Osborn's own Classmates.com account nor his prior assent to the TOS. (*See id.*) Mackey reviewed the Complaint before it was filed on January 20, 2022, and he knew nothing then of any agreement to arbitrate between his counsel and PeopleConnect. (Dkt. 54 ¶ 9). The Complaint itself includes a section designated "No Agreement to Arbitrate" and references similar lawsuits in other jurisdictions against PeopleConnect. (Dkt. 1 ¶¶ 36–45).

Mackey did not include screenshots in the Complaint to show how his likeness is used in advertisements to avoid PeopleConnect's arguments in the earlier lawsuits that use of screenshots in the Complaint would confer a benefit on him. (*Id.* ¶¶ 37, 40). The Complaint neither references Osborn's account nor states that Osborn had agreed to Classmates.com's TOS. (*See id.*) Mackey "do[es] not agree, and ha[s] never agreed, to arbitrate [his] claims against PeopleConnect." (Dkt. 54 ¶ 13). He retained and authorized his counsel to pursue litigation in federal court, not arbitration. (*Id.* ¶¶ 14–15). Finally, Osborn asserts that he personally has "never searched for Mr. Mackey's

---

[4] PeopleConnect asserts that Classmates.com's TOS prohibits one person from creating multiple accounts using different email addresses. (Dkt. 45-1 ¶ 14).

name or photograph on www.classmates.com," nor visited the site for any purpose related to Mackey's claim. (Dkt. 55 ¶ 7).

## C.  Procedural History

Mackey has sued on behalf a class of current and former Illinois residents who are not subscribers of Classmates.com and whose names, photographs, and personal information PeopleConnect extracted from yearbooks and incorporated into its yearbook database to promote Classmates.com subscriptions. (Dkt. 1 ¶¶ 65–72). He brings claims under the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.* ("IRPA"), and Illinois common law for unjust enrichment. (*Id.* ¶¶ 73–86). PeopleConnect moves to dismiss for improper venue under Rule 12(b)(3), asserting that Mackey is bound to arbitrate any claims he may have against it. (Dkt. 44). In the alternative, PeopleConnect moves to dismiss for failure to state a claim. (*Id.*)

### LEGAL STANDARD

A party must move to dismiss for improper venue—rather than to compel arbitration—when an "arbitration clause requires arbitration outside the confines of the district court's district."[5] *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011); *see also Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009). To determine whether the parties are bound to arbitrate, the Court can consider facts outside the pleadings. *Id.* at 809–10. The Court draws reasonable inferences in favor of the non-moving party. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014) (citing *Faulkenberg*, 637 F.3d at 806).

On a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and "draw[s] all reasonable inferences in the [plaintiff's] favor." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). The Court "also consider[s] any documents attached to and integral

---

[5] The arbitration agreement here designates Seattle, Washington, as the arbitration location. (Dkt. 45-1 at 57 § 12.B.2).

to the complaint as part of the [plaintiff's] allegations." *Id.* The complaint's "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), must offer more than "labels and conclusions" or "a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a defendant's motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Notably, "[t]he *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession or control of the defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and citations omitted).

DISCUSSION

**A.    Motion to Dismiss for Improper Venue Under Rule 12(b)(3)**

The Court, rather than an arbitrator, resolves whether an agreement to arbitrate exists. *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005). Agreements to arbitrate remain "a matter of contract." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Just as in any contract, a party must have agreed to an arbitration provision to be bound by it. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). Illinois contract law here governs whether an enforceable agreement to arbitrate exists. *See Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (federal courts sitting in diversity apply the "choice-of-law rules of the forum state" and under Illinois's rules, "forum law is applied 'unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply'" (internal citation omitted)).

Mackey never personally agreed to arbitrate claims against PeopleConnect because he never accepted Classmates.com's TOS. He denies ever visiting Classmates.com, let alone agreeing to its TOS through registering for an account. PeopleConnect submits that he is nevertheless bound to arbitrate because his attorney, Osborn, created a Classmates.com account in August 2019 and failed to opt out of the TOS, which Mackey then ratified by accepting the benefits of his counsel's prior agreement.

An attorney is his client's agent and can bind his client while acting within the apparent scope of his authority during legal representation. *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 277 (Ill. 2004). Osborn acted for himself and not for Mackey when he created his account in August 2019. Osborn had never met and did not represent Mackey before June 3, 2021, so he had neither actual nor apparent authority as his agent before then.[6] *See Braundmeier v. Ancestry.com Operations, Inc.*, No. 20 C 7390, 2022 WL 17176524, at *3 (N.D. Ill. Nov. 23, 2022) ("It strains logic to believe that a principal can authorize an action taken years prior to engaging the agent."). But PeopleConnect maintains that Mackey nonetheless subsequently ratified his agent's agreement to the TOS and is therefore bound by agency principals to arbitrate his claims.

"Ratification occurs when the principal learns of an unauthorized transaction [of the agent], then retains the benefits of the transaction or takes a position inconsistent with nonaffirmation." *Siena at Old Orchard Condo. Ass'n v. Siena at Old Orchard, L.L.C.*, 75 N.E.3d 420, 444 (Ill. App. Ct. 2017) (internal quotation marks omitted). "[T]he person ratifying secures a benefit through the actions of another who is acting on his behalf with apparent or implied authority." *Horwitz*, 816

---

[6] This record is distinguishable from *Knapke v. PeopleConnect, Inc.*, where the record did not clearly show whether a principal-agent relationship existed when counsel created a Classmates.com account and whether counsel did so within the scope of his authority. 38 F.4th 824, 834–35 (9th Cir. 2022). Nor did the record show whether the plaintiff-client knew about and acquiesced to her counsel's assent to the TOS on her behalf. *Id.* at 835–36. The Ninth Circuit vacated the district court's denial of PeopleConnect's motion to compel arbitration and remanded for further discovery on these issues. *Id.* at 836. Here, by contrast, the parties each submitted affidavits that provide sufficient facts to decide the motion.

N.E.2d at 280 (citing *Swader v. Golden Rule Ins. Co.*, 561 N.E.2d 99, 104 (Ill. 1990)). "For ratification to occur, the principal must, with full knowledge of the act, manifest an intent to abide and be bound by the transaction." *Cove Mgmt. v. AFLAC, Inc.*, 986 N.E.2d 1206, 1215 (Ill. App. Ct. 2013) (quoting *Gambino v. Boulevard Mortg. Corp.*, 922 N.E.2d 380, 413 (Ill. App. Ct. 2009)). "Ratification may be inferred from surrounding circumstances, including long-term acquiescence, after notice, to the benefits of an allegedly unauthorized transaction." *Id.* (quoting *Gambino*, 922 N.E.2d at 413)).

Here, PeopleConnect's argument that Mackey ratified by retaining the benefits of an agreement Osborn made nearly two years before they met hangs by a tenuous chain of logic. *First*, PeopleConnect argues that Osborn remains bound to the TOS regardless of which Classmates.com account he uses to access the site—including those for which he has opted out—because the agreement attaches to the individual rather than the account—making all subsequent accounts (and opt-outs) void. *Second*, PeopleConnect continues, Osborn bound his client to the TOS by accessing his Classmates.com account for any suit-related purpose after he was retained, because this falls within the scope of his apparent authority as his counsel. PeopleConnect's argument would extend to anyone connected to counsel who searched for Mackey on the site to perform a Rule 11 investigation of his claims. *Third*, although Mackey knew nothing of the TOS or any arbitration agreement between Osborn and PeopleConnect when he first retained Osborn, PeopleConnect imputes knowledge of this agreement and its "benefits" to Mackey when (1) the pre-suit letter was sent, and (2) he reviewed the Complaint. And *fourth*, by virtue of Osborn's filing the Complaint describing how Classmates.com uses his client's images, Mackey retained the "benefit" of Osborn's agreement to the TOS and thereby bound himself to arbitrate. Even assuming the first contention—that Osborn is still bound by his August 2019 agreement to the TOS because opt-outs

for other accounts are void—this chain of reasoning contains several weak links when viewed against the factual record.

Initially, Osborn averred that he never searched for Mackey on Classmates.com, nor visited the site for any purpose related to his claims, after Mackey retained him. (Dkt. 55 ¶ 7). The record shows that someone searched for Scott Mackey on Classmates.com on January 5, 2022, six days before the pre-suit letter was sent and fifteen days before the Complaint was filed. (Dkt. 45-1 ¶ 24). The pre-suit letter also acknowledges that counsel—without specifying who—visited Classmates.com to conduct a Rule 11 investigation.[7] (Dkt. 1-3). Counsel made similar representations in other filings. (*See* dkt. 14-3 ¶ ("[W]e performed our investigation of Mr. Mackey's claims using an account for which counsel executed the exact procedures your client told the Ninth Circuit would retain the right to a judicial forum."); dkt. 38 at 5–6 ("Plaintiff's counsel opted out of the arbitration clause in the Classmates.com Terms of Service prior to visiting the website to verify that Plaintiff's name and photograph appear on the website.")). PeopleConnect submits that these representations establish that Osborn did use an account—from which he had never successfully opted out of the TOS—to search for Mackey on Classmates.com and thereby assented to the TOS as Mackey's agent within the scope of his representation. This argument falls short.

Again, Osborn denies ever visiting Classmates.com related to Mackey's claim to search for him. By its own terms, the arbitration agreement binds Osborn alone, when accessing the website for himself or on behalf of any others. (Dkt. 45-1 at 5 ("By accessing and using the

---

[7] Mackey submitted the affidavit of Samuel Strauss of Turke & Strauss LLP—also representing Mackey—averring that he directed a non-attorney staff member of his firm to search for Scott Mackey to confirm that his name and photograph appear on the site, and that this staff member was told not to visit any portion of the website that requires agreeing to the TOS. (Dkt. 56 ¶¶ 6–7). This affidavit, however, cannot establish what this unnamed staff did, only what Strauss told him or her to do. Its evidentiary value is limited.

Websites and Services *you* are agreeing to the following Terms of Service. . . . [I]f *you* access and use the Websites and Services on behalf of or for the benefit of another, you are also agreeing to these Terms of Service on their behalf . . . .")). It does not and cannot bind a non-member who has never agreed to the TOS, even when acting at the direction of a member. Mackey has provided evidence that Osborn did not search for Mackey and directed someone else on his team to do so. If that other person never agreed to the TOS and visited sections of the website that are accessible without assenting to the TOS, he or she is not bound by them and did not bind Mackey. Indeed, Mackey's explanation is plausible.

PeopleConnect contends that Mackey could not have alleged certain facts in his Complaint unless a Classmates.com member searched for him. (*See* dkt. 45-1 (citing dkt. 1 ¶¶ 5–8, 49, 50, 54–55)). But Mackey has shown otherwise: some of this information is accessible to non-member users. (*See* dkt. 1 ¶ 6). Other information about how Classmates.com generates advertisements is already publicly available, through prior filings in similar lawsuits with screenshots—all filed well before Mackey retained Osborn. (*See* dkt. 56-1 (*Callahan v. PeopleConnect, Inc.* Complaint); dkt. 56-2 (*Bonilla v. PeopleConnect, Inc.* Complaint); dkt. 56-3 (*Knapke v. PeopleConnect, Inc.* Complaint)). Finally, facts relevant to Classmates.com's use of Mackey's specific photograph in advertisements, accessible only to member-users, are pleaded on information and belief, based on the verification that Mackey's photograph appears in the free section of the site and on the general, publicly available knowledge of how Classmates.com functions. (*See* dkt. 1 ¶¶ 49–50, 54–55). It is entirely plausible that a non-member user, who visited only the non-member sections of Classmates.com, verified that Mackey's name and photograph appear on the site and helped construct the Complaint without ever searching for Mackey by accessing the site as a member.

Even if this did *not* happen, and someone—whether Osborn, another affiliated counsel, or counsel's staff—searched for Mackey after assenting to the TOS without successfully opting out of the arbitration agreement, counsel's undisclosed use of Classmates.com to conduct a Rule 11 investigation is not an action taken on behalf of his client that the client ratified by retaining its benefits. An attorney has an independent obligation to the Court under Rule 11 to conduct a reasonable investigation of the facts underlying a client's claims before pressing litigation to the point of seeking discovery. *Frantz v. U.S. Powerlifting Fed'n*, 836 F.2d 1063, 1068 (7th Cir. 1987). To file a lawsuit without any independent investigation of the underlying facts exposes an attorney and his firm to sanctions. Several courts confronting this same issue have likewise found that an attorney's verification that his client's claims have some factual basis falls well short of conferring a "benefit" on that client. *See Callahan v. PeopleConnect, Inc.*, No. 21-16040, 2022 WL 823594, at *1 (9th Cir. Mar. 18, 2022) ("There is considerable doubt on this record that the Plaintiffs received any 'benefits' that would trigger ratification, such as a settlement or receipt of payment.").[8] PeopleConnect has failed to cite to any analogous case where a court has held that an attorney's independent verification of the factual basis of his client's claim was a "benefit" conferred by the very entity allegedly harming the client's interests. Its ratification argument falters

---

[8] *See also, e.g.*, *Callahan v. PeopleConnect, Inc.*, No. 20-cv-9203, 2021 WL 1979161, at *6 (N.D. Cal. May 18, 2021), *aff'd*, No. 21-16040, 2022 WL 823594 (9th Cir. Mar. 18, 2022) ("As a final point, it is worth noting that the actions of Plaintiffs' counsel here do not serve as the *basis* of Plaintiffs' claims—i.e., counsel's use of the Classmates.com website is not the factual predicate for Plaintiffs' claims. Rather, counsel's use of the website was undertaken as part of the investigation—an investigation consistent with counsel's Rule 11 obligations, and Plaintiffs' duty to plead with specificity a plausible claim . . . into whether Plaintiffs did, in fact, have claims against PeopleConnect. The Court is troubled by PeopleConnect's suggestion that a plaintiff's access to a judicial forum may be cut off simply because counsel for the plaintiff fulfilled a duty under Rules 11 and 12 to investigate prior to filing suit. Under PeopleConnect's position, Plaintiffs here would either file suit without doing the necessary pre-suit investigation, raising serious concerns, or would waive the right to a judicial forum, a right protected under the First Amendment."); *Boshears v. PeopleConnect, Inc.*, No. C21-1222, 2022 WL 888300, at *9 (W.D. Wash. Mar. 25, 2022) ("Nor is there any evidence that Boshears received any 'benefit' from his counsel's use of the Classmates' website, as counsel's use merely aided in the filing of a complaint and satisfying counsel's Rule 11 obligations."); *cf. Braundmeier*, 2022 WL 17176524, at *3 ("A contrary ruling—that a lawyer could unintentionally force clients into arbitration by conducting routine research—would disincentivize fact-checking and burden the litigation process by making lawyers either file complaints with unverified information or seek basic knowledge through onerous discovery.").

here. *See Horwitz*, 816 N.E.2d at 280 ("If there is no benefit, ratification will not be implied."). Although PeopleConnect contends that Mackey has benefited from its proprietary information— *i.e.*, how advertisements for its subscription services are generated—to "bolster" his claims, this knowledge was publicly available through filings in other lawsuits months before Mackey filed his Complaint.

Even if such a benefit was conferred, Mackey never knew any arbitration agreement had existed between PeopleConnect and Osborn before filing his lawsuit. He did not have "full knowledge of the act" that he supposedly ratified. *See Cove Mgmt.*, 986 N.E.2d at 1215. PeopleConnect argues that Mackey should have known about this arbitration agreement when (1) his counsel sent a pre-suit letter to PeopleConnect's counsel disclaiming any arbitration agreement existed, and (2) when he reviewed the Complaint prior to filing. But neither document contains any reference to Osborn's personal Classmates.com account that he opened in 2019. On the contrary, both documents would naturally have confirmed Mackey's belief that he had authorized his counsel solely to litigate in federal court rather than to arbitrate.

PeopleConnect seems to imply that Mackey should have suspected Osborn was hiding something from him, simply by twice declaring that no arbitration agreement existed that could bind Mackey. It suggests that Mackey was grossly negligent or willfully ignorant for failing to learn of the terms of his counsel's agreement after being on notice that such an agreement might exist. (*See* dkt. 45 at 8–10). PeopleConnect places a heavy burden on a non-attorney client by expecting him to suspect an arbitration agreement existed despite his counsel's assertions to the contrary. Such suspicion somehow further obligates the client to inquire into the specific provisions of an online clickwrap agreement that his counsel first entered into years before being retained.

Finally, after learning of Osborn's TOS agreement when PeopleConnect filed its motion, Mackey showed no intent to be bound by any arbitration provision, even had his counsel acted within the scope of his representation by searching for his name on Classmates.com during a Rule 11 investigation. *See Cove Mgmt.*, 986 N.E.2d at 1215 ("For ratification to occur, the principal must, with full knowledge of the act, manifest an intent to be bound by the transaction."). Mackey repudiated this agreement and averred that he never authorized his counsel to arbitrate his claims. This is consistent with his actions: litigating in federal court. To the extent that he inadvertently retained any purported "benefits" from his counsel's actions despite this express disavowal, he could not return such benefits after filing suit. *See Callahan*, 2022 WL 823594, at *1 ("[A]t the time the complaint was filed, there was no evidence Plaintiffs knew the arbitration agreement existed, that their counsel had executed it, or that they had a right to rescind it. By the time Plaintiffs were alerted to this information, any information derived from their counsel's use of the website had already been publicly filed and had become part of the litigation. At that stage, it was no longer possible for Plaintiffs to avoid 'accepting' any of these purported 'benefits.'").

This record is sufficient to show that Mackey has not ratified any agreement of his counsel to arbitrate claims against PeopleConnect. The Court needs no additional evidence, so it denies PeopleConnect's Motion to dismiss for improper venue under Rule 12(b)(3) and declines to order further discovery on arbitrability.

**B.      Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)**

**1.   Compliance with Rule 8(a) Pleading Requirements**

PeopleConnect argues that Mackey's Complaint fails to satisfy Rule 8(a). (Dkt. 45 at 13–16). Within the Complaint's 87 paragraphs, Mackey makes 12 allegations "on information and

belief," ten of which pertain to Classmates.com's use of his photo.[9] (*See* dkt. 1 ¶¶ 16, 28, 40, 49–56, 58). As discussed, Mackey's counsel conducted a Rule 11 investigation of his claims to verify that his name and photograph *do* appear on Classmates.com. But he did not include screenshots in his Complaint to avoid PeopleConnect's argument that this would "confer a benefit" on Mackey that would ratify any prior arbitration agreement Osborn made when he first created his Classmates.com account. (*Id.* ¶ 41). PeopleConnect now seeks to invalidate the Complaint as wholly inadequate because Mackey's counsel sought to preserve his client's rights and filed a Complaint that is both factually supported but did not require counsel to access Classmates.com through his membership account—an account which, according to PeopleConnect's position, counsel had no opportunity to opt out of to represent Mackey.

PeopleConnect attempts to stretch Rule 8's pleading requirements beyond their intended purpose. It cannot claim in good faith that it has insufficient notice of Mackey's claims. Nor can it state that Mackey has insufficient factual basis to allege how Classmates.com uses his photographs, when Mackey's counsel performed a Rule 11 investigation to verify that his photo appears on the website, and publicly available filings from prior lawsuits show how the website generates advertisements. Rather, by invoking Rule 8(a) in combination with its ratification argument, PeopleConnect aims only to box Mackey out of federal court altogether. PeopleConnect has made more specific information unavailable to him by default. *Cf. Callahan v. PeopleConnect, Inc.*, No. 20-cv-9203, 2021 WL 1979161, at *6 (N.D. Cal. May 18, 2021) (characterizing the "resulting policy dilemma created by PeopleConnect's position" as "being on the horns of a

---

[9] The Complaint also begins with the prefatory statement: "Plaintiff Scott Mackey, by and through his attorneys, makes the following allegations on information and belief, except as to factual allegations pertaining to Plaintiff, which are based on personal knowledge." (Dkt. 1 at 1). The Court agrees that this is somewhat vague, but the individual allegations in the Complaint nevertheless make clear which are made "on information and belief."

dilemma, Hobson's choice, stuck between a rock and a hard place, or caught between Scylla and Charybdis").

The Court considers the information that Mackey pleads "on information and belief" to be within the defendant's unique control. *See Arista Records*, 604 F.3d at 120; *see also, e.g.*, *Frerck v. Pearson Educ., Inc.*, No. 11-cv-5319, 2012 WL 1280771, at *3 (N.D. Ill. Apr. 16, 2012) (recognizing as appropriate allegations pleaded on information and belief when defendant withheld information that plaintiff had asked for before suing, after plaintiff established basis for belief defendant possessed that information). Notwithstanding Mackey's allegations on information and belief, his Complaint satisfies Rule 8(a)'s notice-pleading standard.

### 2. Illinois Right of Publicity Act

Turning to the merits, PeopleConnect maintains that both Mackey's Illinois law claims are facially inadequate as pleaded. Further, it argues that federal law bars Mackey's claims altogether.

To state an IRPA claim, "the plaintiff must allege: (1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's commercial purpose." *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1099 (7th Cir. 2022) (citing 765 Ill. Comp. Stat. 1075/30(a); *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. 2006)). The IRPA defines "commercial purpose" disjunctively as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." *Huston*, 53 F.4th at 1100 (citing 765 Ill. Comp. Stat. 1075/5).

### a) Extraterritoriality

Illinois law cannot be applied extraterritorially without clear intent from the statute's express provisions. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005). While the parties dispute whether the IRPA was intended to extend outside of Illinois, the Court need not reach that question, because at this stage, Mackey sufficiently alleges in-state IRPA violations.

"[T]here is no single formula or bright-line test for determining whether a transaction occurs within" Illinois; the Court considers each case "on its own facts." *Id.* at 854. Deciding where a statutory violation occurs turns on whether the circumstances relating to the alleged conduct "occur primarily and substantially in Illinois." *Id.* The Court considers various factors, including the plaintiff's residence, the location of harm, communications between parties (where sent and where received), and where the defendant's policy is carried out. *See id.*

Here, Mackey is an Illinois resident, and the class he proposes includes current and former Illinois residents. PeopleConnect designed its website to allow users to focus their searches of yearbooks on Illinois schools, knowing that many alumni still live in Illinois. Mackey has alleged harms flowing from the nonconsensual appropriation of his and others' likenesses from Illinois school yearbooks. This harm occurs in Illinois when a current resident searches for a former classmate—whether that former classmate still lives in Illinois or not—and is presented with an advertisement in connection with that person's likeness. PeopleConnect's failure to obtain consent from Illinois residents before using their photographs occurred in Illinois. (Dkt. 1 ¶ 25). PeopleConnect's policy of displaying advertisements to users occurred on its website, "and thereby occurred nationally and thus necessarily in Illinois." *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2022 WL 971479, at *11 (N.D. Ill. Mar. 31, 2022). Under these circumstances, the conduct underlying Mackey's allegations occurred primarily and substantially in Illinois. The claims do not require applying IRPA extraterritorially. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 &

n.7 (9th Cir. 2019) (explaining that a statute's "application to individuals who are located in Illinois, even if some relevant activities occur outside the state," is not extraterritorial).

PeopleConnect focuses its extraterritoriality argument on the location of Classmates.com users, who may or may not be in Illinois when shown Mackey's or a putative plaintiff's likeness. PeopleConnect states, without citation to legal authority, that "[t]he *sine qua non* of an IRPA violation is the publication of a person's identity to a third-party," so "the required in-state nexus is satisfied only if the person's identity was displayed to a Classmates.com user in Illinois." (Dkt. 45 at 16–17). But "third-party viewing is not an element of an IRPA claim." *Fischer*, 2022 WL 971479, at *11; *see also Huston*, 53 F.4th at 1099 (listing elements of an IRPA violation); *Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 930 (Ill. App. Ct. 2013) (holding that a defendant's "holding out" for a commercial purpose means representing a plaintiff's identity in connection with the sale of a product, merchandise, goods, or services, without demonstrating publication to a third party as a required element). Although the user's location is one factor to consider in the extraterritoriality analysis, *Avery* suggests that "focusing solely" on this factor would "create questionable results" given other countervailing factors. 835 N.E.2d at 853; *accord Fischer*, 2022 WL 971479, at *11. Mackey alleges sufficient facts to show PeopleConnect's conduct relevant to his claims and those of other putative plaintiffs occurred primarily and substantially in Illinois.

Finally, whether circumstances related to PeopleConnect's conduct occurred primarily and substantially in Illinois is "a highly fact-based analysis that is generally inappropriate at the motion to dismiss stage." *Vance v. Int'l Bus. Machs. Corp.*, No. 20-cv-577, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020) (applying extraterritoriality analysis to Illinois Biometric Information Privacy Act (BIPA)); *see also, e.g.*, *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *6 (N.D. Ill. Sept. 16, 2017) (declining to decide extraterritorial application of BIPA on motion to

dismiss with undeveloped factual record); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1102 (N.D. Ill. 2017) (concluding that plaintiffs had alleged sufficient facts to survive motion to dismiss but discovery might change calculus). Here, too, discovery may disclose additional facts showing IRPA's extraterritorial application, and the parties will have an opportunity to revisit their arguments.

      **b)**    **Prima Facie IRPA Claim**

          ***i.***    ***Plaintiff Pleaded Public Use of His Identity***

      PeopleConnect argues that Mackey fails to allege "the public use or holding out of [his] identity" that defines the commercial-use element of the IRPA claim. 765 Ill. Comp. Stat. 1075/5. According to PeopleConnect, to show "public use or holding out," Mackey must allege that a third party—other than someone connected with his lawsuit—viewed his name and photograph on Classmates.com. This is incorrect; the IRPA does not require third-party viewing, so Mackey need not allege anyone saw his image.

      While the statute does not define "public use," several courts have indicated that publishing the plaintiff's identity online in connection with its advertisements satisfies this element. *See Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 929 (Ill. App. Ct. 2013) (noting that in context of the IRPA "the word 'public' is unambiguous and means the 'aggregate of the citizens' or 'everybody' or the 'people at large' or the community at large"); *Performance Mktg. Ass'n, Inc. v. Hamer*, 998 N.E.2d 54, 59 (Ill. 2013) (noting that publication of online marketing "is inherently national or international in scope and disseminated to a national or international audience"). By publishing Mackey's name and photograph online in connection with its services, PeopleConnect has disseminated them to an international audience; it has made a public use of Mackey's identity. Alternatively, even if Mackey has not adequately alleged "public use," he has alleged the "holding

out" of his image. "[T]he Act prohibits the holding out—meaning the representation—of an individual's identity on or in connection with certain activities." *Trannel*, 987 N.E.2d at 930. Mackey alleges that PeopleConnect represented his identity on its website in connection with advertisements for its subscription services. In both contexts, the statute focuses on the defendant's conduct—not the consequences of this conduct on third parties.

Several courts have rejected the argument that the IRPA requires a third party to perceive the plaintiff's appropriated identity to demonstrate the defendant has made a "public use" or "holding out" of it. *See Siegel v. Zoominfo Techs., LLC*, No. 21-cv-2032, 2021 WL 4306148, at *3–*4 (N.D. Ill. Sept. 22, 2021) (finding plaintiff sufficiently stated claim for relief by alleging website used identity in free previews to advertise, promote, and offer subscription sales, without alleging specific third-party viewership); *Fischer*, 2022 WL 971479, at *10 ("[H]ow many (if any) [defendant website] users saw a putative class member's search result or SEO Directory profile is immaterial to whether [defendant] violated the IRPA by holding out that person's identity in connection with the offering for sale of its services."). Moreover, the common-law tort of the appropriation of name or likeness, which the IRPA codified in Illinois, *see Trannel*, 987 N.E.2d at 928, includes no element of third-party viewership. *See* Restatement (Second) of Torts § 652C (Am. L. Inst. 1977) ("One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of privacy."). Moreover, PeopleConnect has cited to no legal authority establishing that the IRPA requires third-party viewing. The Court is not persuaded by its unsupported proposition.

## ii. *Plaintiff Pleaded Use of Identity for Commercial Purpose*

Next, PeopleConnect argues that Mackey has failed to plausibly allege the use of his identity "for a commercial purpose" such as "for purposes of advertising" and "in connection with the offering for sale or sale" of goods or services. This argument likewise falls short.

The IRPA "contemplates a use or holding out of an individual's identity with the aim of effectuating a sale." *Huston*, 53 F.4th at 1101. Mackey has alleged that (1) Classmates.com provides a publicly accessible webpage where users can search for him, (dkt. 1 ¶ 51); (2) users who search for Mackey are shown low-resolution photographs of him, (*id.* ¶ 52); (3) users who click on Mackey's low-resolution photograph receive a pop-up message asking the user to register with the site, (*id.* ¶ 53); (4) after registering, the website solicits the purchase of a paid subscription, (*id.* ¶ 54); and (5) next to search results containing Mackey's photographs, the website displays banner ads soliciting the purchase of a subscription, (*id.* ¶ 55). Classmates.com solicits the purchase of its subscription services by using Mackey's image as part of its advertising flow logic. In other words, it uses or holds out Mackey's identity to sell its product. *See Huston*, 53 F.4th at 1101.[10]

PeopleConnect relies on factual affidavits to rebut Mackey's allegations. (*See* dkt. 45 at 18–19). But at the motion-to-dismiss stage, the Court must accept as true all well-pleaded facts in the Complaint. *Gociman*, 41 F.4th at 878. Materials inconsistent with the Complaint should not be considered on a Rule 12(b)(6) motion. *See Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348,

---

[10] *See also, e.g.*, *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1030 (D. Nev. 2021) ("Plaintiffs' names and images are allegedly contained in Ancestry's Yearbook Database. If a prospective subscriber searches for Plaintiffs' names and tries to click through to their information, a limited access user is presented with an advertisement to purchase a subscription. The advertising indicates that Ancestry is trading off the value of customers searching for Plaintiffs' names in order to entice them into purchasing a subscription."); *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020) ("The complaint alleges that Whitepages used Lukis's identity . . . in free previews used to advertise, promote, and offer for sale its monthly subscription services. That is a textbook example under the IRPA of using a person's identity for a commercial purpose."); *Siegel*, 2021 WL 4306148, at *3 (holding plaintiff stated IRPA claim where website generated a "preview page" in response to search with plaintiff's identifying information, prompts user to register for a free account to access more, and then advertised paid subscriptions).

354 (7th Cir. 2017) (discussing impropriety of considering exhibits outside the pleadings at motion-to-dismiss stage). It is premature to consider PeopleConnect's factual defenses to Mackey's claims.

Additionally, PeopleConnect relies on two inapposite cases. In the first case, *Thompson v. Getty Images (US), Inc.*, the court dismissed an IRPA claim because the defendant sold photos of the plaintiff himself and did not use "[plaintiff's] photographs in connection with an offer to sell or a sale of *some other* product, merchandise, good, or service as contemplated by the statute." No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013) (emphasis added). PeopleConnect argues the situation here is analogous, because Classmates.com displays a preview of the exact thing PeopleConnect seeks to sell—yearbook excerpts. But Mackey has alleged that PeopleConnect uses his identity to sell subscriptions to Classmates.com, which includes such services as "access to full-resolution student photographs from hundreds of thousands of yearbooks; visibility into who has visited the subscriber's profile; and the ability to read and reply to messages sent by other subscribers." (Dkt. 1 ¶ 12). A Classmates.com subscription thus constitutes a separate product or service from the yearbook excerpts.

Likewise, in *Dobrowolski v. Intelius, Inc.*, the court dismissed an IRPA claim after concluding that the defendant did not use plaintiffs' identifies for a commercial purpose. No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018). But as the court explained in *Lukis*,

> the defendants [in *Dobrowolski*] used the free previews to advertise only background reports regarding the person identified in the preview. . . . Here, by contrast, Whitepages used Lukis's identity to advertise not a background report regarding *Lukis*, but a monthly subscription service giving the purchaser access to background reports on anybody in Whitepages's database. Thus, Lukis's identity was not part and parcel of the entire product or service being advertised, meaning that Whitepages's use of her identity had a commercial purpose . . . .

21

*Lukis*, 454 F. Supp. 3d at 760–61. As in *Lukis*, Mackey here alleges PeopleConnect uses his likeness to sell not just his own yearbook image and personal information, but subscriptions to Classmates.com that incorporate additional services. Mackey sufficiently alleges that PeopleConnect uses his likeness for a commercial purpose.

### iii.  *Incidental-Use Doctrine Does Not Apply in Illinois*

Next, PeopleConnect argues that any alleged public use or holding out of Mackey's identity is too attenuated to support an IRPA claim. (Dkt. 45 at 21–22). PeopleConnect points to *Bogie v. Rosenberg*, where the Seventh Circuit interpreted Wisconsin's right-of-publicity statute and held that the use of the plaintiff's image was "de minimus" and thus fell within the incidental-use exception under Wisconsin law. 705 F.3d 603, 615–16 (7th Cir. 2013). But PeopleConnect also concedes that the Illinois Supreme Court has not adopted the incidental-use exception. (Dkt. 45 at 21 n.12). Indeed, it fails to cite any Illinois caselaw importing this common-law doctrine into interpretation of Illinois's statute. Federal courts interpreting state law must proceed cautiously in the absence of state supreme court guidance, for "federal court pronouncements on the content of state law inherently involve a significant intrusion on the prerogative of the state courts to control that development." *Wagner-Meinert Eng'g, LLC v. TJW Indus., Inc.*, 587 F. Supp. 3d 744, 749 (N.D. Ind. 2022) (quoting *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999)). Because Illinois law does not currently recognize the incidental-use exception in interpreting the IRPA, the Court declines to apply it here.

### iv.  *Plaintiff Did Not Consent to Use of His Image*

PeopleConnect also contends that Mackey cannot state an IRPA claim because he consented to the use of his likeness on Classmates.com by ratifying his counsel's consent to the TOS. But as explained, Mackey has not ratified his counsel's consent to the TOS. His Complaint

22

alleges that he never consented to PeopleConnect's use of his name, photographs, or persona to promote Classmates.com subscriptions. (Dkt. 1 ¶ 4). At this stage, no more is required to satisfy the lack-of-consent element in Mackey's IRPA claim.

### v.    *Statute of Limitations*

Finally, in supplemental briefing, PeopleConnect argues that Mackey's IRPA claim is time barred under the one-year statute of limitations. (Dkt. 66 at 4–5). This Court held in *Bonilla v. Ancestry.com* that the plaintiff could not maintain his IRPA claim against Ancestry.com when Ancestry began hosting his yearbook image on June 17, 2019, and the plaintiff filed his complaint on December 14, 2020. No. 20 C 7390, 2022 WL 4291359, at *1 (N.D. Ill. Sept. 16, 2022). Because the IRPA does not expressly provide a statute of limitations and the Illinois Supreme Court has not ruled on the matter, this Court followed guidance from the Illinois appellate courts concluding that the one-year statute of limitations imported from the common-law tort applied to the statute. *See id.* at *2 (citing *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006)).

But the Court in *Bonilla* ruled for defendants at summary judgment, not on a motion to dismiss. *See id.* A statute-of-limitations defense is not normally part of a motion under Rule 12(b)(6) and only appropriate where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). Here, Mackey's Complaint alleges no facts that allow the Court to determine whether the affirmative defense is satisfied. The Complaint does not allege when Mackey's yearbook photograph was added to Classmates.com, when it was integrated into the advertising display

logic, or whether PeopleConnect altered or changed it in any way since the original publication, among other relevant facts. The statute-of-limitations defense requires further factual development and the benefit of full briefing before it becomes dispositive in this case.

### 3. Unjust Enrichment

The parties agree that the unjust-enrichment claim rises and falls with the related IRPA claim. (Dkt. 45 at 23; dkt. 53 at 24). *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."). Mackey has sufficiently pleaded his IRPA claim; therefore, his unjust-enrichment claim likewise survives at this stage.

### C. Federal Law Does Not Bar Mackey's IRPA Claim

In addition to its facial challenges to Mackey's IRPA claim, PeopleConnect argues that his claims are barred by the First Amendment, the Dormant Commerce Clause, the Communications Decency Act, and Copyright Act preemption. The Court disagrees on each count.

### 1. First Amendment

PeopleConnect characterizes Mackey's IRPA claim as an attack on constitutionally protected speech. This characterization hinges on PeopleConnect's assertion that Mackey objects to PeopleConnect's business selling republished yearbooks and yearbook excerpts, which happen to contain his likeness.[11] But this is not a fair reading of the Complaint. Mackey does not object to PeopleConnect's sale of republished yearbooks or excerpts from those yearbooks. He claims that

---

[11] *See, e.g.*, dkt. 45 at 23 ("Plaintiff's efforts to prevent PeopleConnect from disseminating yearbooks is an attack on constitutionally protected speech."); *id.* ("The yearbooks and yearbook excerpts Plaintiff contests easily qualify as core constitutionally protected speech."); *id.* at 24 ("As Plaintiff's Complaint makes clear, the materials he seeks to suppress are a source of information and interest for millions of readers."); *id.* ("Plaintiff's proposed application of IRPA to protected First Amendment speech amounts to a content-based restriction, to which strict scrutiny applies.").

Classmates.com has misappropriated his likeness with the aim of selling its subscription services. (*See* dkt. 1 ¶¶ 5–10, 15, 21, 49–56; *see also id.* ¶ 12 ("A Classmates.com subscription includes far more than access to the photographs Classmates used to advertise the subscription.")). This distinction is critical to evaluating PeopleConnect's First Amendment argument.

"[T]he degree of protection afforded by the First Amendment depends on whether the activity sought to be regulated constitutes commercial or non-commercial speech." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65 (1983). Commercial speech is afforded a lesser degree of protection than noncommercial, or "core" First Amendment speech. *Id.* at 66 (citing *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)); *see also Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 515 (7th Cir. 2014). Commercial speech "does no more than propose a commercial transaction." *Id.* (cleaned up and internal citations omitted); *see also United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001). Guideposts for classifying speech containing both commercial and noncommercial elements include "whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." *Jordan*, 743 F.3d at 517; *see also Bolger*, 463 U.S. at 66–67. But speech loses its commercial character "when it is inextricably intertwined with otherwise fully protected speech." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988).

Here, the speech at issue is clearly commercial. Mackey alleges that after a user clicks on his photograph, the user is prompted to register for a Classmates.com account. Thereafter, the page generates an advertisement encouraging the user to purchase a Classmates.com subscription. Even taking PeopleConnect's point that the yearbook excerpts included in the full subscription access to Classmates.com have expressive value under the First Amendment, the website advertises a more expansive product: its subscription services. These include "access to full-resolution student

photographs from hundreds of thousands of yearbooks; visibility into who has visited the subscriber's profile; and the ability to read and reply to messages sent by other subscribers." (Dkt. 1 ¶ 12). The latter two services, at least, constitute a product specific to Classmates.com rather than mere access to expressive content. Such services are not "inextricably intertwined" with access to yearbook excerpts; Classmates.com need not offer these additional services at all to further its commercial purpose. *Cf. Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989) (reasoning that commercial speech is not "inextricably intertwined" with noncommercial speech in sales pitches for housewares that also teach home economics—the one does not necessitate the other). By selling these services, PeopleConnect has an economic motivation for its speech. Several other courts have concluded the same in nearly identical cases. *See, e.g.*, *Boshears*, 2022 WL 888300, at *10–*11; *Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 879 (W.D. Wash. Aug. 10, 2021), *rev'd on other grounds*, 38 F.4th 824 (9th Cir. 2022).

The Court applies intermediate scrutiny in commercial-speech cases. *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011) (citing *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1989)). The Court asks: "(1) whether the speech concerns lawful activity and is not misleading; (2) whether the asserted governmental interest is substantial; (3) whether the regulation directly advances the governmental interest asserted; [and] (4) whether it is not more extensive than is necessary to serve that interest." *Pearson v. Edgar*, 153 F.3d 397, 401 (7th Cir. 1998) (citing *Cent. Hudson Gas & Electric Corp.*, 447 U.S. at 566) (cleaned up). The first prong of this analysis dictates whether the speech is entitled to protection at all. *See F.T.C. v. Trudeau*, 662 F.3d 947, 953 (7th Cir. 2011) ("[M]isleading commercial speech gets no constitutional protection."). As alleged here, PeopleConnect's speech is not entitled to protection because it misleads the public into believing that Mackey and other putative class members "are

26

Classmates.com users who willingly shared their personal information with Classmates.com and endorse Classmates.com's subscription product." (Dkt. 1 ¶ 9). This suffices at the motion-to-dismiss stage.

Even if the speech were not misleading, Mackey's IRPA claim here survives intermediate scrutiny. "[T]he purpose of the IRPA is to allow a person to control the commercial value of his or her identity." *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005). PeopleConnect has not challenged the facial constitutionality of the IRPA, nor Illinois's substantial government interest in protecting the value of a person's identity.[12] PeopleConnect's sole argument that the IRPA as applied in Mackey's case fails intermediate scrutiny is that "there is no 'reasonable fit' between IRPA's aim—preventing unauthorized commercial endorsements—and barring PeopleConnect's publication of yearbook excerpts that identify persons included in yearbooks." (Dkt. 45 at 27). But once again, that is not what Mackey objects to. He claims that PeopleConnect *does* use his likeness in a manner that appears to endorse its product. His claim precisely fits the IRPA's objective. PeopleConnect's First Amendment argument is baseless.

### 2. Dormant Commerce Clause

PeopleConnect next argues that the IRPA as applied in Mackey's claim violates the dormant Commerce Clause. It does not.

Congress regulates interstate commerce. U.S. Const. art. I, § 8, cl. 3. The Commerce Clause "presumes a national market free from local legislation that discriminates in favor of local interests.'" *Regan v. City of Hammond*, 934 F.3d 700, 702 (7th Cir. 2019) (quoting *C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 393 (1994)). As a corollary to Congress's authority to

---

[12] Had PeopleConnect presented a facial challenge to the IRPA's constitutionality, it would have had to file a notice of constitutional question and served it on the Illinois Attorney General. Fed. R. Civ. P. 5.1. PeopleConnect has not done so.

regulate interstate commerce, state and local governments are precluded from "erecting obstacles to interstate commerce even where Congress has not regulated." *Id.* (citing *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459–61 (2019)). But "[t]he fact that a state or municipal law affects interstate commerce in some way is by itself insufficient to render the law suspect under the commerce clause, as almost any local regulation is bound to touch upon interstate commerce." *Id.* (citing *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1130–31 (7th Cir. 1995)). "Dormant Commerce Clause doctrine applies only to laws that *discriminate* against interstate commerce, either expressly or in fact." *Id.* (quoting *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 501 (7th Cir. 2017) (emphasis in original)). In other words, the regulation must somehow burden out-of-state economic actors more than in-state actors. *See Park Pet Shop, Inc.*, 872 F.3d at 501–02.

PeopleConnect makes no argument that the IRPA as applied here treats PeopleConnect as an out-of-state company differently from an in-state company. Nor could it. The IRPA prohibits all companies—regardless of where located—from appropriating someone's likeness for commercial purposes without consent. It regulates business conduct within Illinois, but it burdens all economic actors alike; a local company has no more freedom to appropriate Mackey's image to sell its products than PeopleConnect. Nor has PeopleConnect indicated that the IRPA as applied disparately impacts out-of-state companies. Even if Mackey's IRPA claim "touch[es] upon interstate commerce" by requiring all companies to obtain consent before using a person's likeness to sell products, it has posed no obstacle to transacting business that discriminates against out-of-state companies. *Regan*, 934 F.3d at 702; *see also Park Pet Shop, Inc.*, 872 F.3d at 502 (dormant Commerce Clause does not come into play for ordinance that neither expressly discriminates nor

28

causes disparate impact on out-of-state business owners). Accordingly, PeopleConnect's argument that Mackey's claim violates the dormant Commerce Clause fails.

### 3. Communications Decency Act

PeopleConnect next claims immunity from Mackey's claims under Section 230 of the Communications Decency Act. But Section 230 does not provide PeopleConnect a safe harbor on the facts as alleged here.

The Communications Decency Act states, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1); *Huon v. Denton*, 841 F.3d 733, 741 (7th Cir. 2016). It defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." § 230(f)(3). Section 230 shelters companies from liability when they act as "a mere passive conduit" for publishing others' actionable content. *See Huon*, 841 F.3d at 741. But companies can be liable "for creating and posting . . . or otherwise actively participating in the posting of [an actionable] statement in a forum that the company maintains." *Id.* (citing *Chi. Laws.' Comm. For Civ. Rts. Under L., Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008); *see also Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1166–67 (9th Cir. 2008) (en banc) (concluding that website was not a "passive transmitter of information provided by others" but helped develop information); *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1199–1200 (10th Cir. 2009) (concluding that a website was also content creator and not mere conduit). Dismissal based on CDA immunity is proper only when the complaint's factual allegations unambiguously establish all the elements of the defense. *Bonilla*, 574 F. Supp. 3d 582, 592 (N.D. Ill. 2021).

Mackey alleges that PeopleConnect creates content because it integrates his yearbook photo into its advertising to sell subscription services. (*See* dkt. 1 ¶¶ 5–8, 13–14, 51–56; *see also* ¶ 13 ("PeopleConnect is the sole author, designer, and implementor of the advertising techniques and messages giving rise to this lawsuit. PeopleConnect does not host user-generated content on any part of the Classmates website relevant to this lawsuit. PeopleConnect is the sole curator, designer, and creator of the content described in this Complaint.")). This contrasts with PeopleConnect's attempts to characterize Classmates.com as a mere publisher of yearbook excerpts. (*See, e.g.*, dkt. 57 at 14 ("Here, plaintiff's claims depend solely on the presentation of yearbooks and yearbook excerpts that PeopleConnect played no role in creating." (citing McGuane Decl. ¶ 10))). But this factual affirmative defense is not properly before the Court at the motion-to-dismiss stage.

This Court found the same in *Bonilla*. 574 F. Supp. 3d at 592. PeopleConnect attempts to distinguish *Bonilla*, noting that defendant Ancestry.com created content by sending marketing emails to registered users that integrated the plaintiff's photo. But, considering similar allegations, this Court concluded in *Bonilla* "that non-users are shown a limited version of the record (including a low-resolution photograph) with a promotional pop-up advertisement promising access to Plaintiff's identity and likeness if they sign up for a paid subscription." *Id.* Mackey's claims are nearly identical. Here, as in *Bonilla*, Mackey has alleged that Classmates.com "collected and organized records and subsequently used Plaintiff's and the putative class members' names, likenesses, and identities in these records they curated for commercial gain." *Id.* Thus, PeopleConnect cannot invoke CDA immunity at this stage.[13]

---

[13] *Accord Callahan v. PeopleConnect, Inc.*, No. 20-cv-9203, 2021 WL 5050079, at *8 n.7 (N.D. Cal. Nov. 1, 2021) ("[T]here would also appear to be a question of fact as to whether PeopleConnect should be deemed a developer of information itself—i.e., not just a mere service provider—to the extent it was not simply republishing yearbook photographs and/or information."); *Knapke*, 553 F. Supp. 3d at 875 ("The offending content is generated by

### 4. Copyright Act Preemption

Finally, PeopleConnect posits that federal copyright law preempts Mackey's IRPA claim. The Court disagrees.

The Copyright Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103." 17 U.S.C. § 301(a). But not every claim that involves a copyright falls within the Copyright Act's ambit. *See Nova Design Build, Inc. v. Grace Hotels, LLC*, 652 F.3d 814, 816 (7th Cir. 2011).

*Toney v. L'Oreal* is instructive. There, the Seventh Circuit analyzed whether federal copyright preemption applied to the IRPA claim of a plaintiff whose photograph was used on a product without her consent. 406 F.3d at 908–09. The court explained that the right-of-publicity act would not be preempted when the defendant used the plaintiff's persona or identity for a commercial purpose. The court explained,

> Toney's identity is not fixed in a tangible medium of expression. There is no "work of authorship" at issue in Toney's right of publicity claim. A person's likeness— her persona—is not authored and it is not fixed. The fact that an image of the person might be fixed in a copyrightable photograph does not change this. From this we must also find that the rights protected by the IRPA are not "equivalent" to any of the exclusive rights within the general scope of copyright that are set forth in § 106. Copyright laws do not reach identity claims such as Toney's. Identity, as we have described it, is an amorphous concept that is not protected by copyright law; thus, the state law protecting it is not preempted.

---

Classmates and the advertisement is not merely some passive display of content created by another entity, even if it contains a picture from a school yearbook. In this context, Classmates is the content creator and not entitled to immunity under the CDA."); *Boshears*, 2022 WL 888300, at *12 ("The sole issue in this case is whether Classmates' decision to create advertisements using Boshears' persona to sell subscription services violates the IRPA and the common law. That content is generated expressly by Classmates and the advertisement is not merely a passive display of content created by another entity, even if it contains a picture from a school yearbook. In this context, Classmates is the content creator and is not entitled to immunity under the CDA.").

*Id.* at 910. The same is true for Mackey's claims under the IRPA. He alleges that PeopleConnect uses his persona and identity—which do not make up an authored, fixed work—for a commercial purpose, to sell its subscription services. (*See* dkt. 1 ¶¶ 4–12). This claim falls outside the scope of federal copyright law. *See Toney*, 406 F.3d at 910–11; *see also Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 666 n.24 (7th Cir. 1986) ("A player's right of publicity in his name or likeness would not be preempted if a company, without the consent of the player, used the player's name to advertise its product . . . .").

In sum, federal law does not bar Mackey's IRPA claim as pleaded.

## CONCLUSION

For these reasons, the Court denies PeopleConnect's Rule 12(b)(3) Motion and its Rule 12(b)(6) Motion to dismiss. [44]


Virginia M. Kendall
United States District Judge

Date: March 17, 2023

32